## GEORGE F. ALGER COMPANY *v.* PUBLIC SERVICE COMMISSION.

1. PUBLIC SERVICE COMMISSION—MOTOR CARRIERS—CERTIFICATES—EVIDENCE.

    A court will not substitute its judgment for that of the public service commission in the matter of granting a certificate of public convenience and necessity to an applicant for a motor carrier permit, where there is competent evidence presented in favor of granting such a certificate as well as evidence in opposition thereto (CL 1948, § 476.13).

2. SAME—MOTOR CARRIERS—STATUTES.

    There must be a showing that the public service commission failed to follow some mandatory provision of the motor carrier statute in order to hold its order, purporting to have been issued thereunder, unlawful (CL 1948, § 476.13).

3. SAME—STATUTES—COURTS.

    A court is required to express its judgment and opinion as to whether or not the public service commission failed to follow some mandatory provision of the motor carrier act, the question presented being a judicial one (CL 1948, § 476.13).

4. CARRIERS—REVOCATION OF CERTIFICATE—EVIDENCE—COURTS.

    The circuit court was not in error, under evidence presented, in determining that the public service commission had failed to follow a mandatory provision of the motor carrier act when the court determined that certificate which had been granted intervening defendants had been revoked through failure to furnish service established without a previous order of the commission (CL 1948, § 476.13).

5. PUBLIC SERVICE COMMISSION—CIRCUIT COURTS—FINDINGS OF FACT.

    The circuit court's determination that the certificate of public

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 43 Am Jur, Public Utilities and Services § 224 *et seq.*
[6–9] Generally as to certificate of public convenience and necessity, see 37 Am Jur, Motor Transportation § 10 *et seq.*

convenience and necessity of intervening defendants had been revoked through their failure to render the service established was not a substitution of the court's judgment for that of the public service commission on a finding of fact, where no finding of fact by the commission appears to have been made in respect to its order failing to vacate the certificate (CL 1948, § 476.13).

6. CARRIERS—MOTOR CARRIERS—TEMPORARY ABANDONMENT OF SERVICE —REVOCATION OF CERTIFICATE.

A temporary abandonment of service, established by holder of certificate of public convenience and necessity under the motor carrier act, for more than 10 days need not have been intended as a permanent abandonment of such service in order to effect a revocation of the certificate (CL 1948, § 476.13).

7. SAME—STATUTES—FAILURE TO FURNISH SERVICE—PENALTY.

That motor carrier act provided a harsh penalty for a certificate holder's failure to furnish established service for more than 10 days is a question of policy for the legislature to determine (CL 1948, § 476.13).

8. SAME—MOTOR CARRIERS—DISCONTINUANCE OF SERVICE—PERMISSION—INTENT.

A motor carrier's failure to furnish the service required by his certificate of public convenience and necessity does not necessarily effect an automatic revocation of his certificate, (1) where he has previously obtained permission of the public service commission for such discontinuance and (2) where shown to have been unaccompanied by an intent to discontinue the service (CL 1948, § 476.13).

9. SAME—MOTOR CARRIERS—DISCONTINUANCE OF SERVICE—INTENT— EVIDENCE.

Defendant certificate holder's intent not to furnish the service as required by the certificate for a period of more than 10 days without a previous order of the public service commission *held,* clearly shown by evidence presented (CL 1948, § 476.13).

Appeal from Ingham; Coash (Louis E.), J. Submitted January 13, 1954. (Docket No. 15, Calendar No. 45,736.) Decided February 18, 1954.

Bill by Geo. F. Alger Company, a Michigan corporation, against Michigan Public Service Commis-

sion, to set aside certificate. Petition by plaintiff before commission to set aside portional transfer and declare certificate revoked. L. C. Beaver and R. Wells, doing business as Beaver & Wells, and A. L. Kauffman Cartage Company, a Michigan corporation, and various other parties intervene. Petition dismissed by commission. Decree for plaintiff setting aside order of commission. Intervening defendants appeal. Affirmed.

*Matheson, Dixon & Brady* and *Foster, Snyder, Foster & Loomis,* for plaintiff.

*John W. Babcock,* for intervening defendants.

DETHMERS, J. The question presented is whether intervening defendants Beaver and Wells, copartners and holders of a Michigan public service commission certificate as limited common motor carrier, abandoned or discontinued service thereunder for more than 10 days without previous authority from the commission, thereby permitting it to become revoked under CL 1948, § 476.13 (Stat Ann § 22.546). From a commission holding in the negative plaintiff appealed to the Ingham county circuit court and from its opposite holding intervening defendants appeal here.

The cited section of the statute reads:

"No common motor carrier authorized by this act to operate shall abandon or discontinue any service established under the provisions of this act without an order of the commission. Any certificate under which service is discontinued for more than 10 days without the previous order of this commission authorizing the same shall be deemed to be revoked without any action upon the part of the commission."

Pertinent facts are: For 22 years transportation of the gypsum products of the United States Gyp-

sum Company was handled exclusively by plaintiff. For the last 6 of those years plaintiff transported it with equipment leased from Beaver and Wells, hereinafter called defendants. The drivers thereof, the dispatcher at the gypsum company, and defendants themselves, were all employed by plaintiff to handle the gypsum company operation for plaintiff. Intervening defendant Kauffman was a certificated limited common motor carrier with authority to transport specified articles, including building materials. He had never competed with plaintiff for the gypsum company account. On June 21, 1951, Kauffman and defendants filed a joint application for permission to transfer a portion of Kauffman's authority, namely, that of transporting building materials, to defendants. The commission approved it on that date. Defendants then completed steps prerequisite to the transfer, such as payment of privilege fees, making arrangements for insurance coverage, filing tariffs, and filing a sworn statement, as required by the commission, of what equipment defendants would use in the exercise of the franchise. Thereupon the commission, on June 29, 1951, issued its order permitting the transfer and, as of that date, defendants were authorized by law to operate and to render service under the authority transferred to them. Defendants transported nothing under that authority, however, until Monday, August 6th, when they supplanted plaintiff as hauler of the U.S. Gypsum Company products, hauling them until August 10th when they were restrained therefrom, at plaintiff's instance, by the Ingham county circuit court.

On August 6th plaintiff filed with the commission a petition praying that defendants' certificate be declared revoked under the statute because they had discontinued service without previous commission permission for more than 10 days, namely, from June 29th to August 6th, and further praying that defend-

ants be prohibited from instituting illegal and unauthorized operations as a carrier without a valid certificate. The record of consequent proceedings before the commission discloses the following: that, despite some hedging and contradictory statements on the subject, defendant Wells admitted on the witness stand that all of the equipment listed on their sworn statement filed with the commission was, in fact, included in the lease to plaintiff; that this admission was finally made after he had testified that specific equipment was on the sworn list but not under the lease and then been confronted with the list itself disclosing that the mentioned equipment was not on the list; that this admission was confirmed by the testimony of a witness who had compared the sworn list with that in the lease; that the commission made no finding of fact contrary to this admission; that the terms of the lease required 10 days' notice for termination; that on July 26th defendants mailed plaintiff such notice, making termination effective "at the close of business August 4th;" that through Saturday, August 4th, the leased equipment continued to be operated for plaintiff under the lease and the drivers, dispatchers, and Beaver and Wells themselves, continued on plaintiff's payroll, all handling the U.S. Gypsum Company business for plaintiff; that on August 2d defendants sent the commission a letter stating that they would be "ready to commence business under our name August 6th;" that on August 10th they filed the required mileage report for the month of July, showing no operation during that month and bearing the notation "we began operations August 6, 1951;" that defendants testified, in effect, that they had been ready, willing and able to transport building materials at all times from June 29th to August 6th, but had not done so because they had received no requests for service or offers of business; that except for the above-noted steps for bring-

ing about the transfer, filing a competitive tariff, cancelling the lease and repainting and checking some of their equipment, defendants could not, under cross-examination, point to anything in the shape of advertising, soliciting business or anything else that they had done which indicated a willingness to do business or a holding themselves out as ready therefor or that amounted to "service" prior to August 4th, and, significantly, the commission made no finding of fact that defendants had done anything specific of that character other than as just above mentioned; that the commission did find that the defendants did not "physically move a load of freight until August 6, 1951" and that there had been no movement of their trucks over the highways until that date; that the commission further found that, for the purposes of competing with plaintiff, the defendants had, on July 2d, requested authority to file a new tariff with respect to the gypsum account on less than the 30 days' notice required by statute and that, having been refused such permission, they filed a competitive tariff on July 3d, to take effect after 30 days; and that the commission, referring to this 30-day delay before defendants could make their rates similar to plaintiff's, said in its opinion:

"The foregoing seems a reasonable explanation for Beaver and Wells' *failure to institute service* until August 6, 1951, and to constitute a good and sufficient cause for such failure." (Emphasis supplied.)

Defendants' first claim of error is that the circuit court substituted its own opinion and judgment for that of the commission on whether the certificate of defendants should be continued. In that connection they quote from *Giaras* v. *Michigan Public Service Commission,* 301 Mich 262, 269, the following:

"It is a well-established principle of law that if there is competent evidence presented to the com-

mission in favor of granting such a certificate as well as evidence in opposition thereto, the court will not substitute its opinion and judgment for that of the commission."

The very next sentence of that opinion, not quoted by defendants but in point here, reads:

"To declare an order of the commission unlawful there must be a showing that the commission failed to follow some mandatory provision of the statute."

The situation here is not, as in *Giaras,* one calling for exercise by the commission of the function of determining, on the basis of competent evidence, whether public convenience and necessity would be served by granting a certificate. That function is expressly conferred by statute on the commission and is decidedly not a judicial one; hence, the rule that the court will not substitute its judgment and opinion in that regard for that of the commission. Here, on the contrary, the question presented is a judicial one, recognized as such in the last above quotation from *Giaras,* namely, whether the commission "failed to follow some mandatory provision of the statute". On this question the court is required to express its own judgment and opinion regardless of what the commission may have found. We think the circuit court correct in answering it in the affirmative.

Defendants' second claim of error is that the circuit court ran afoul of what this Court said in *Giaras,* as follows: "Courts may not substitute their judgment on questions of fact decided by the commission." To what findings of fact by the commission do defendants point with respect to which they assert the circuit court substituted its own opinion?

First, they mention the plaintiff's claim and defendants' denial that defendants "did not conduct operations" from June 29th to August 6th and, in

fact, discontinued service for more than 10 days. Nowhere in the opinion of the commission can any express finding of fact be found that defendants did conduct operations and did not discontinue service during said period. On the contrary, it expressly found, as previously noted and quoted, that defendants justifiably failed to institute service before August 6th. To the claim that a finding of fact favorable to defendants on this point inheres in the commission holding that the certificate was not revoked, the simple answer is to be found in the opinion itself, which discloses that the holding was not predicated on a finding of fact in that regard in accord with defendants' mentioned denial, but, rather, on a commission construction of the statute and its view that application of the forfeiture provisions of the statute to the undisputed facts of this case "would work undue hardship on a great number of other carriers whose physical movement of equipment was interrupted for more than 10 days by a strike of employees, a governmental regulation, or a natural or manmade catastrophe," and that, from an examination of the statute as a whole, they did not believe such an unreasonable result was required.

Second, defendants point to a statement in the opinion of the commission to the effect that defendants had "carried out all the external acts necessary to carry on service but one, *i.e.,* the movement of trucks over the highways." This was a conclusion, unsupported by a commission cataloguing of such external acts or an affirmative finding of any other than those previously noted herein, with respect to which the trial court made no contrary finding of fact. It is evident, therefore, and particularly because there is no dispute concerning what external acts defendants carried out, that the commission was not, at that juncture, deciding a question of fact, but, rather, the legal one of what acts are necessary, un-

der the statute, to avoid forfeiture. Hence, there was, in this respect, no substituting of the circuit court's opinion for that of the commission on a question of fact.

Third, defendants point to the statement in the commission's opinion that defendants obviously had no intent of giving up any rights and then cite, as a substitution therefor by the trial court of its own opinion, the finding of the latter that "the record clearly indicates that Beaver and Wells discontinued an established service." We discern no inconsistency between the 2 findings. Even though defendants may not have intended to give up any rights, they could, nevertheless, at the same time, perhaps due to ignorance of the forfeiture provisions of the statute, have afforded and intended to afford no service during the period from June 29th to August 6th. Throughout defendants' brief runs the thought that there could be no forfeiture under the statute so long as they intended to and took steps looking to rendering service some time in the future. Acceptance of that theory would serve to read the 10-day limitation on discontinuance of service out of the statute altogether. In consequence, it must be said that the dictionary definition of the word "abandon", quoted by defendants as being "to relinquish or give up with intent of never again resuming one's right," pertinent when the question relates to permanent abandonment, is entirely irrelevant when, as here, the question is simply whether service was discontinued temporarily, for more than 10 days.

Defendants' third and fourth claims of error go to the holding of the circuit court that defendants did discontinue service for more than 10 days within the meaning of the statute, causing its forfeiture provisions to become operative. Defendants say such holding, applied to the facts at bar, is harsh and works an injustice, inasmuch as, followed to its logi-

cal conclusion, it would mean that whenever an operating carrier, for reasons beyond his control, fails to move equipment on the highway for over 10 days his certificate would be revoked. As previously noted, the commission gave voice to the thought that to so construe the statute "would work undue hardship." Whether unauthorized discontinuance of service should be visited with a penalty, harsh or unharsh, just or unjust, is a question of policy for the legislature to determine. It has done so. Moreover, it is to be observed that the statute provides a safety feature suited to circumstances beyond the carrier's control in that the penalty is imposed upon discontinuance of service for more than 10 days only if previous authorization of the commission is not obtained. Furthermore, it does not necessarily follow from the decision of the circuit court that an automatic revocation occurs in every instance when, for reasons beyond his control, the service of an operating carrier is interrupted by failure of equipment to move on the highways for more than 10 days. On the contrary, the holding of the trial court is, under the facts in this case, entirely consistent with defendants' contention that to constitute discontinuance of service, within the meaning of the statute, such cessation of operations must be accompanied by an intent to discontinue. For it is manifest that defendants had no intent to transport building materials, move equipment over the highways or render service before August 6th. Eloquent thereof are: (1) defendants' mentioned listing with the commission of equipment, all of which, as we find (and concerning which the commission made no finding), was then under the lease to plaintiff which they purposely left in effect through August 4th; (2) their election, after their attempt on July 2d to effectuate an immediate rate change on less than 30 days' notice met with commission refusal thus making competition

with plaintiff for the U.S. Gypsum Company business unfeasible before August, to continue until August 4th receiving from plaintiff the financial benefits accruing to them under their lease with and their employment by plaintiff to handle the gypsum company product; (3) their August 2d letter to the commission advising that they would be "ready to commence business" on August 6th and their report to the commission of August 10th stating that they "began operations August 6th;" (4) their inability, on the witness stand, to point to anything they had done before August 4th that amounted to service under their certificate except those things previously mentioned herein, which consisted of nothing more than taking the necessary steps to effectuate the transfer of the authority, cancelling the lease as of August 4th, filing competitive rates effective August 2d, and painting and fixing some equipment. It is idle, in the face of such facts, for defendants to urge that they were at all times ready, willing and able to serve the public but failed to institute service before August 6th because no one offered them business or requested their services, when the record so clearly discloses that they solicited no business, did not seek, desire or intend to handle it, and did nothing, other than as above mentioned, calculated to make their service available to the public prior thereto. Here the failure of vehicles to move on the highways coincided with and sprang from defendants' intent that they should not do so. This amounted to a positive discontinuance of service from June 29th to August 6th. The forfeiture provisions of the statute became operative accordingly.

The order of the commission is reversed and the decree of the circuit court affirmed, with costs to plaintiff against intervening defendants.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and KELLY, JJ., concurred.