J. E. BEJIN CARTAGE COMPANY *v.*
PUBLIC SERVICE COMMISSION.

1. PUBLIC SERVICE COMMISSIONS—COURTS—QUESTIONS FOR TRIER OF FACTS.
   A reviewing court has no power to substitute its judgment for that of the public service commission on issues of fact, where the finding of the commission is supported by substantial or competent evidence, it being necessary to the reversal of such commission's order that it be shown the commission failed to follow some mandatory provision of the statute or was guilty of an abuse of discretion in the exercise of its judgment (CLS 1956, § 479.20).

2. SAME—CARRIERS—ABANDONMENT OF SERVICE—QUESTION FOR TRIER OF FACTS.
   Whether or not a carrier has abandoned or discontinued the service authorized by its certificate of convenience and necessity is primarily an issue of fact for resolution by the public service commission, to be determined upon hearing, at least where the issue arises between competing carriers (CL 1948, § 476.13).

3. ADMINISTRATIVE LAW—DETERMINATION OF QUESTIONS OF FACT.
   The mere fact that the ultimate fact to be determined by an administrative agency may, when found, resolve the controversy, no more logically or necessarily transforms that fact, however vital to a resolution of the controversy, into one of law than a similar arbitrary stamping as law of the minutiae of facts that lead up to the ultimate fact to be determined would in turn alter their true character as facts.

4. PUBLIC SERVICE COMMISSIONS—CARRIERS—CIRCUIT COURT—FINDING OF FACT—EVIDENCE—ABANDONMENT OF SERVICE.
   The Ingham circuit court exceeded its authority in reversing

REFERENCES FOR POINTS IN HEADNOTES
[1]  42 Am Jur, Public Administrative Law § 209 *et seq.*
[2]  42 Am Jur, Public Administrative Law § 211.
[3]  42 Am Jur, Public Administrative Law § 214.

action of the public service commission's order authorizing the transfer of a certificate of convenience and authority to transport packages from city merchants and other shippers to points within a radius of 40 miles of the city, where question of abandonment was hotly contested before the commission, and there was competent testimony to support the commission's order (CL 1948, § 476.13; CLS 1956, § 479.20).

DETHMERS, C. J., and CARR and KELLY, JJ., dissenting.

Appeal from Ingham; Coash (Louis E.), J. Submitted June 12, 1957. (Docket No. 11, Calendar No. 47,235.) Decided April 14, 1958. Rehearing denied June 11, 1958.

Bill by J. E. Bejin Cartage Company, a Michigan corporation, the Greyhound Corporation, a Delaware corporation, Short Way Lines, Inc., an Ohio corporation, Indian Trails, Inc., a Michigan corporation, and Michigan Motor Bus Association, a Michigan corporation, against the Michigan Public Service Commission seeking to invalidate its order permitting transfer of certificate of authority to do cartage business. Peter P. Ellis Delivery System, Inc., and Detroit Delivery, Inc., both Michigan corporations, intervene as parties defendant. Decree for plaintiffs. Intervening defendants appeal. Reversed.

*Matheson, Dixon & Brady (Edmund M. Brady, Walter N. Bieneman* and *John M. Veale,* of counsel), and *Snyder & Loomis (George W. Loomis,* of counsel), for plaintiffs.

*Sullivan, Eames & Moody,* for intervening defendants.

VOELKER, J. Once again we must grapple with the question of the proper extent of judicial review from the doings and findings of an administrative tribu-

nal. (It seems that more and more an increasing proportion of our work is devoted to these perplexing situations.) This time our problem arises under the act (PA 1933, No 254, as amended [CL 1948 and CLS 1956, § 475.1 *et seq.* (Stat Ann and Stat Ann 1955 Cum Supp § 22.531 *et seq.*)]) regulating motor carriers of property and passengers, and providing that no such carriers shall operate upon the highways of this State unless they shall first have obtained authority from the Michigan public service commission. Involved is the validity of a transfer authorized by the commission of a portion of such authority from Detroit Delivery, Inc., to Peter P. Ellis Delivery System, Inc., both being intervening defendants below and defendants and appellants here.

The plaintiffs and appellees consist of 3 motor carriers of passengers, a motor bus association and 1 common restricted motor carrier of property, the J. E. Bejin Cartage Company. The interest of the motor carriers of passengers arises from their right under subdivision (g) of section 1 of article 1 of the statute* to transport "package express * * * in the same vehicle used to transport passengers." The plaintiffs attacked the foregoing transfer authorized by the commission upon the ground that the authority transferred had been forfeited prior to transfer as a consequence of section 13 of article 2 of the act (CL 1948, § 476.13 [Stat Ann § 22.546]), which provides:

"Sec. 13.  *  *  *  No common motor carrier authorized by this act to operate shall abandon or discontinue any service established under the provisions of this act without an order of the commission. Any certificate under which service is discontinued for more than 10 days without the previous order of

* CL 1948, § 475.1 (g) (Stat Ann 1955 Cum Supp § 22.531 [g]).—
REPORTER.

this commission authorizing the same shall be deemed to be revoked without any action upon the part of the commission."

On March 20, 1956, appellants filed with the public service commission a joint transfer application, in which the approval of that body was sought for the transfer from one to the other of certain previously authorized operating rights held by the transferor, Detroit Delivery, Inc., to deliver packages sold by certain listed retail merchants in Detroit, which application read, in part, as follows:

"Merchandise sold in retail trade by and for the following shippers: Himelhoch Brothers & Company; Ernst Kern & Company; Frank & Seder's; Fyfe & Company; Siegel's, and Rollins Company, between Detroit and various points.
"Merchandise sold at retail by Detroit merchants to purchasers, such deliveries to be within a radius of 40 miles of Detroit. (May 27, 1937)
"Shipments, other than retail, not to exceed 35 pounds in weight per shipment, consigned to any 1 consignee in any 1 day, between Detroit and points within a radius of 40 miles of Detroit, INTRASTATE. (July 31, 1941)"

On March 21, 1956, the commission by order authorized the transfer of authority sought; thereafter the plaintiffs and appellees filed with the commission an application for rehearing, rescission of the transfer order, and for revocation of the transferred certificate. Hearings on this application consumed 3 days and on June 29, 1956, the commission entered an order denying the application, 1 commissioner dissenting. Prior to this decision the plaintiffs had instituted the instant cause and, following denial of their application before the commission, obtained a restraining order from the circuit court for Ingham county enjoining the commission from authorizing or permitting the defendant Ellis to

conduct any service under the order of transfer, and suspending and staying its order. No testimony was taken in circuit court prior to this action.

Following the denial of the plaintiffs' application before the commission all of the parties stipulated that the records and files at the hearing before the commission be transmitted to the Ingham circuit court and should constitute all of the evidence before that court. No new evidence was in fact taken or received in circuit court, and on October 9, 1956, the circuit court reversed the majority decision of the commission and held that the defendant Detroit Delivery, Inc., had lost any rights which it might have had in the certificate the commission had ordered transferred to the other carrier defendant, Ellis, because it, Detroit Delivery, Inc., had discontinued and abandoned service under such certificate for a period of more than 10 days prior to June 29, 1956, without previous order of the commission. This appeal has resulted. Further facts will follow as the necessity appears.

We are here concerned, then, with a judicial review of an order of the Michigan public service commission. The legislative act setting up that commission and providing its powers and duties also provides for review of its orders. Section 20 of article 5 of the act (CLS 1956, § 479.20 [Stat Ann 1955 Cum Supp § 22.585]) provides that aggrieved parties may within 30 days from the date of the order complained of file a chancery suit in the circuit court for Ingham county. Section 20 defines the authority of that court in such circumstances partly as follows:

"The said circuit court in chancery is hereby given jurisdiction of such suits and empowered to affirm, vacate, or set aside the order of the commission in whole or in part and to make such other order and decree as the court shall decide to be in accord-

ance with the facts and the law. * * * In all actions under this section the burden of proof shall be upon the complainant to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable, as the case may be."

At first blush it would appear that the circuit court could hear the case with substantially all the latitude traditionally vested in it when sitting as chancellor. Such, however, appears not to be the case. The case of *Giaras* v. *Public Service Commission,* 301 Mich 262, involved an order of the commission denying the plaintiff a certificate of convenience and necessity to operate as a common carrier. The circuit court dismissed the plaintiff's bill and upon appeal here this Court in dismissing the appeal had the following to say on the subject at page 269:

"While the above section of the act prescribes that appeals shall be governed by the statutes governing equity or chancery appeals, yet the burden of establishing that the order of the commission is unlawful or unreasonable remains with the complaining party. It is conceded by plaintiff that courts may not substitute their judgment on questions of fact decided by the commission and hence, we are not called upon to re-examine the rule announced in *Lafayette Transfer & Storage Co.* v. *Michigan Public Utilities Commission,* 287 Mich 488 (28 PUR NS 455), in the light of the above amendment.

"It is a well-established principle of law that if there is competent evidence presented to the commission in favor of granting such a certificate as well as evidence in opposition thereto, the court will not substitute its opinion and judgment for that of the commission. To declare an order of the commission unlawful there must be a showing that the commission failed to follow some mandatory provision of the statute or was guilty of an abuse of discretion in the exercise of its judgment."

The *Giaras Case* appears to affirm our holding in the *Lafayette Case,* where this Court reversed a decree of the circuit court in plaintiff's favor which in turn reversed an order of the commission granting a permit to carry to the intervening defendant. This Court had this to say (after citing cases) on the scope of permissible review (pp 493, 494):

"These cases established the rule that   *   *   * on review   *   *   * of an order of the commission *   *   * this Court had no power to substitute its judgment for that of the commission on issues of fact."

It now seems appropriate to look at the facts as found by the commission in this case. In the majority opinion before that body there are 10 separate findings, so entitled, in which the commission found, substantially, as follows: that the original permission was granted to Detroit Delivery, Inc., on or prior to July 1, 1940; that in 1944 it sold part of its package-carrying equipment to another carrier and cancelled some of its accounts; that it then agreed with said carrier to discontinue at least the major part of the carrying of said retail merchandise; that thereafter Detroit Delivery, Inc., continued to carry some retail merchandise for said retail merchants as well as for others, both retail and wholesale; that for the period 1945 through 1950 it rendered carrying service and furnished vehicles and drivers therefore in Detroit and within an 8-mile radius beyond; that from 1951 to March, 1956, Detroit Delivery, Inc., performed little or no retail delivery beyond Detroit; that at the time of the hearing and some 11 years prior thereto Detroit Delivery, Inc., had been transporting alcoholic supplies and equipment of the Michigan liquor control commission throughout points in the southern peninsula of Michigan; that at all times "at least from 1944 up

to the date of the hearing" Detroit Delivery, Inc., had equipment capable of being used to deliver packages and parcels; that during an even longer period it had tariffs on file with the commission covering such transportation; and, finally, "that Detroit Delivery, Inc., at all times for the period 1944 through 1956 was ready, willing and able to perform package or parcel delivery service under its certificate."

In its opinion the circuit court on the basis of a review of the testimony taken below made numerous new or different or additional findings of fact, of which the following quotations are fairly typical:

"Since 1944 the business of Detroit Delivery, Inc., has been the delivery of liquor, et cetera, for the Michigan liquor control commission. The record very clearly shows that for years prior to 1956 the Detroit Delivery, Inc., did not deliver a single package under their original certificates, and that they did not solicit any business whatsoever and that they did not hold themselves out as being in the package delivery business. It is true that they had an ad in the yellow pages of the Detroit telephone directory listing the Detroit Delivery, Inc., but their only business for many years has been entirely for the delivery of liquor."

Again, further on:

"The record very clearly indicates that Detroit Delivery, Inc., discontinued their package delivery service many years prior to 1956, and that no permission was ever requested or granted by the commission to discontinue such services. They did not intend to carry on such business and the record indicates that it was their intention to give up that part of their business.

"There is nothing in the record to show that Detroit Delivery, Inc., ever intended to resume such service some time in the future or that they took any steps necessary to resume such service. The discontinuance was their own free voluntary act, and was

not caused by reasons beyond their control, but was a deliberate intention to discontinue such service.

"In the majority opinion of the commission it is stated that the question in this case is whether the nonusing of a portion of a certificate would result in the automatic revocation of such portional part of certificate. In their opinion they quote from 23 Am Jur, Franchise, § 27, as follows:

" 'There must be something more than mere nonuse to constitute abandonment. There must also be an act clearly indicating intention to abandon.'

"In their findings the commission found that it was the desire and intention of the Detroit Delivery, Inc., to discontinue the major part of their service of delivering for retail merchants. The commission also found that Detroit Delivery, Inc., between 1951 and March of 1956, performed little or no retail deliveries as were allowed under that portion of their certificate. This clearly indicates that it was the intention of Detroit Delivery, Inc., to abandon this part of the services granted them under their certificate."

Then finally in conclusion:

"Therefore, this court finds that the majority opinion of the commission granting the transfer of the parcel delivery rights of the Detroit Delivery, Inc., to Peter P. Ellis Delivery System, Inc., is contrary to statute for the reason that the Detroit Delivery, Inc., lost any rights which they may have had in said certificate because it discontinued service under such certificate for a period of more than 10 days prior to June 29, 1956, without the previous order of the commission.

"An order may enter reversing and setting aside the majority opinion and order of the commission as being contrary to law."

To sustain the decision of the circuit court below the plaintiffs urge that our instant case is controlled by our decision in the case of *George F. Alger Company* v. *Public Service Commission,* 339 Mich 104.

The appellants likewise want to depend on that case to reach a favorable result for their side. There we affirmed a decree of the circuit court setting aside an order of the commission which found that there had been no abandonment or discontinuance of service under section 13 (CL 1948, § 476.13 [Stat Ann § 22.546]). There the question was not, as here, whether the original holder of the certificate of authority had lost its rights by abandonment or discontinuance of service prior to the attempted transfer, but rather whether the transferee there (situated similarly in interest to Ellis here) had by nonuser lost its rights after the clearly valid transfer of authority had been made. In other words the question there was not (as here) whether there was any "live" authority left to transfer (that there was such authority was not seriously questioned in that case) but whether the transferee of that undoubted authority did not subsequently lose its rights therein by nonuser, that is, by abandonment and discontinuance. Under the situation presented in that case we held that—since under the record there it was in our view undisputed that the equipment that would have had to be used to perform the carrier service contemplated was admittedly tied up under binding lease—the circuit court was right in ruling that there had been an abandonment and discontinuance.

It should also be noted that our situation here does not involve any serious question of delayed or interrupted service to the customers of a carrier; it is rather more the situation of a spirited effort by alert and healthy competitors to successfully move in if they can on some of the apparently lucrative package-carrying business in the Detroit area.

Both the majority opinion of the commission and the appellants here seek to distinguish the *Alger Case* from this on its facts. We have already noted some of those differences. But the plaintiffs, in

effect, urge that whatever the facts there or here, the question of abandonment and discontinuance of service was there held always to be a question of law, and to buttress their position they not unreasonably point to the language of our Court in the *Alger Case* at p 110:

"The situation here is not, as in *Giaras,* one calling for exercise by the commission of the function of determining, on the basis of competent evidence, whether public convenience and necessity would be served by granting a certificate. That function is expressly conferred by statute on the commission and is decidedly not a judicial one; hence, the rule that the court will not substitute its judgment and opinion in that regard for that of the commission. Here, on the contrary, the question presented is a judicial one, recognized as such in the last above quotation from *Giaras,* namely, whether the commission 'failed to follow some mandatory provision of the statute.' On this question the court is required to express its own judgment and opinion regardless of what the commission may have found. We think the circuit court correct in answering it in the affirmtive."

Passing without further comment the rather interesting question of precisely how we there found ourselves able to reach a decision that a service which had never yet been "established" (section 13) could have been held to be abandoned or discontinued under that section, that question would still not help the defendants here as they are clearly under that section of the law. The plain fact seems to be that comfort can be found for all sides in the rather elusive *Alger Case,* depending upon what parts of the opinion one cares to read and what other parts one is ready to ignore. As we read that case we think it decided and laid down nothing more startling than the sound proposition that the question of whether service under a certificate of authority to carry is

abandoned or discontinued under section 13 may, under some circumstances, become solely one of law, and that it there properly became a question of law because the facts constituting the abandonment were there found and held by us to be undisputed. If we misread that case and it instead means, as plaintiffs appear to urge, that the question of abandonment and discontinuance under section 13 is always under all circumstances solely a judicial question, that is, a question of law, regardless of what the public service commission may have found the facts to be, and that the commission's finding and holding on that question may under all circumstances be disregarded and reversed as a matter of law by a court upon review, then we must respectfully record our disagreement. Nor can we accept or follow the distinction apparently sought to be drawn in that opinion, as just quoted, between a certificate of convenience and our present situation except as that passage is confined strictly to the facts in that case. To do so would, in our opinion, inject more and not less uncertainty concerning the important question of the scope of authority of the commission in determining disputed issues of fact on matters properly coming before it.

As for the suggestion at least tacitly made here that in any case the last sentence of section 13 contemplates an automatic revocation of authority without any "action" by the commission, and that therefore the commission automatically had nothing to transfer, and likewise upon hearing nothing properly before it to decide, we say that that provision can still make good sense when the issue of abandonment or discontinuance arises between the commission and the offending carrier; it perhaps wisely takes the burden of proof and of affirmative action and investigation of service off the commission; but when the issue is raised by rival or competing carriers or

otherwise and not by the commission itself, we feel that the issue remains primarily one of fact to be determined upon hearing like other disputed issues of fact.    Any other interpretation would result in promulgating a situation of uncertainty falling little short of chaos in this important branch of public law. To state what could happen is to demonstrate its unwisdom.    Competing carriers could spy on and lie in wait for each other and then triumphantly claim when they are ready that an authority had long since been automatically revoked.    The picture is not good.    In any event we are hard put to envisage any situation where the issue of abandonment or discontinuance of service, where controverted, would not from its nature require in every case an orderly hearing and determination of the facts.    In our opinion the above portion of section 13 has largely to do with the question of the burden of proof as between the commission and a carrier on the issue of abandonment or discontinuance of an established carrier service.

We also apprehend that the question properly at issue before the commission in our case was not that of possible diminution in or curtailment of service by Detroit Delivery, Inc., whether authorized or not, but whether it had abandoned or discontinued all package service, within the meaning of section 13. Nor do we understand that that section in its present form purports to deal with anything short of outright total abandonment or discontinuance of an established service.    Whether that section should or not is a question more properly for the legislature than the courts.

If we were to risk venturing a rough working rule in this troubled area it might run something like this: What is usually called an issue of fact may, under some circumstances (as in the *Alger Case*), become solely an issue of law, while under normal circum-

stances that issue remains solely one of fact. Applying that to this case, where there is no substantial dispute on the facts tending to show an actual abandonment or discontinuance of service, then such an issue may become what we call solely one of law. (That is the way we read the *Alger Case*.) But where there is such a dispute on the facts, and where there is competent evidence tending to support the finding made, then we conceive the question to become—or rather remain—essentially one of fact, or what we may call one of ultimate fact. This ultimate fact to be determined—in this case whether there was or was not an abandonment or discontinuance of an established service—may and normally does in turn depend upon many other contributing factors or facts. The mere fact, however, that the ultimate fact to be determined may, when found, resolve the controversy and end the lawsuit no more logically or necessarily transforms that fact, however vital to a resolution of the controversy, into one of law than a similar arbitrary stamping as law of the minutiae of facts that lead up to the ultimate fact to be determined would in turn alter their true character as facts.

Facts found one way or another may result in undeniably profound legal and economic consequences for the litigants and the public; but for our courts to appear to hold out of hand that every decisive fact found by an administrative tribunal clothed with the power and duty—and, we may add, ostensibly the training and facilities—to resolve such facts, instead becomes in all circumstances one of law, is to make an appearance before such a body merely an empty and "expensive way station on the road to ultimate decision." (*Jerry McCarthy Highland Chevrolet Co.* v. *Department of Revenue*, 351 Mich 558.) We do not think this was the result envisaged by the legislature in creating such administrative tribunals or

that it was likewise the intention of this Court as expressed in the main trend of its decided cases in this field. A clear recognition of this basic principle would be most desirable for the public, the litigants, and for our administrative agencies and courts alike.

In our case the fact of abandonment or discontinuance of service was keenly disputed before the commission below. It appears from the record that there was competent testimony from which the decision might have gone either way. We think that which way it *should* have gone is not for our courts to say. That the question was a close one may further be indicated by the fact that the commission split 2 to 1. In that connection and for other reasons it is not amiss to quote from 42 Am Jur, Public Administrative Law, § 211, pp 626–633, as follows:

"Questions of Fact. In the absence of statutory directions to the contrary, and of any vital defect such as one with respect to jurisdiction or procedure, and except as there may be an exception for findings of facts bearing upon constitutional or jurisdictional issues, it is the general rule that administrative findings of fact are conclusive upon a reviewing court, and not within the scope of its reviewing powers, at least if supported by evidence, or substantial evidence, or competent evidence, or if based upon conflicting evidence. The conclusiveness of findings of fact by an administrative agency is not affected by the fact that there was a wide difference of opinion among its members, or that some of these members dissented. The court cannot substitute its judgment for that of an administrative agency in making a finding of fact, and when the evidence warrants the conclusions of the administrative agency, the courts do not review."

We find and hold that the question of whether there was an abandonment or discontinuance of an established service here was a disputed question of fact

as that question was presented to the commission in this case; that there was competent evidence from which the commission could have reached the result that it did; and that the circuit court in these circumstances exceeded its authority in undertaking to make a finding of new or different facts, including a different finding on the ultimate fact of whether there was or was not any such abandonment or discontinuance of service. It would follow that the decision of the circuit court must be reversed, its restraining order dissolved, and the majority order of the commission reinstated and affirmed, with costs to the prevailing parties.

SMITH, BLACK, and EDWARDS, JJ., concurred with VOELKER, J.

CARR, J. (dissenting). This case comes before the Court on appeal from a decree of the circuit court of Ingham county setting aside an order of the Michigan public service commission. It involves the interpretation and application of certain provisions of the statute, hereinafter referred to, regulating the operation of motor carriers on the public highways of the State. Said statute requires that any carrier subject to its provisions shall obtain authority from the commission as a prerequisite to so operating.

In 1944, and for some years prior thereto, the defendant Detroit Delivery, Inc., had been authorized to transport merchandise for certain named shippers within a 40-mile radius of the city of Detroit. In the year named it was granted additional authority to transport liquor and alcoholic beverages for the liquor control commission of the State. On August 1, 1944, said defendant entered into an agreement with the United Parcel Service of Detroit pursuant to which it sold delivery equipment to the latter company and transferred nearly all of its accounts, not

including, however, the liquor delivery business. Since receiving authorization therefor the principal business of Detroit Delivery, Inc., has been the transportation of liquor and alcoholic beverages. It appears that no attempt was made to obtain business under the original certificates.

Under date of March 20, 1956, Detroit Delivery, Inc., hereinafter referred to as defendant, petitioned the commission to approve transferring to Peter P. Ellis Delivery System, Inc., a portion of the authority granted by the original certificates, the authority to be thus transferred relating to the transportation of merchandise, sold in retail trade by designated shippers, between Detroit and other points; merchandise sold by Detroit merchants for delivery within a radius of 40 miles of said city; and shipments, other than retail, not exceeding 35 pounds in weight, from Detroit to consignees within a radius of 40 miles thereof. The transfer was approved on March 21, 1956, no hearing being held.

Being informed of the making of said order, plaintiffs herein filed their petition asking that it be set aside for certain alleged reasons, among others that the authority so sought to be transferred had been automatically revoked under the provisions of CL 1948, § 476.13 (Stat Ann § 22.546) because defendant had discontinued and abandoned service under the authority granted to it. Intervening defendants opposed the petition, denying that plaintiffs were entitled to the relief sought. Following a hearing 2 of the members of the commission concluded that under the facts disclosed by the testimony taken the statute above cited was not applicable, and entered an order accordingly approving the transfer. The third member of the commission dissented, asserting as the reason therefor that defendant had abandoned and discontinued service, under the authority sought to be transferred, for more than a 10-day period

without authority from the commission so to do, and that, in consequence, such authority was automatically revoked under the statute.

On appeal to the circuit court of Ingham county, pursuant to CLS 1956, § 479.20 (Stat Ann 1957 Cum Supp § 22.585), the order entered under the majority opinion of the commission was reversed, the court finding that the statute was applicable under the facts established by the proofs and that the authority sought to be transferred by defendant to another carrier had been terminated because of failure to exercise it. Defendants Detroit Delivery, Inc., and Peter P. Ellis Delivery System, Inc., have appealed.

In support of the order of the commission the members who issued it made certain specific findings of fact which, in view of the claims made by appellants, require consideration. Such findings were as follows:

"(1) That the aforesaid authority covered merchandise sold at retail and merchandise other than at retail was granted to Detroit Delivery, Inc., by this commission or its predecessor on or prior to July 1, 1940.

"(2) That on or about August 1, 1944, Detroit Delivery, Inc., sold to United Parcel Service of Detroit, Inc., 14 panel trucks and 5 van-type trucks together with certain other personal property utilized in the transportation of the so-called packages or parcels and at the same time agreed to cancel certain accounts with some 20 retail firms located in the city of Detroit, Michigan.

"(3) By agreement entered into on August 1, 1944, between Detroit Delivery, Inc., and United Parcel Service of Detroit, Inc., Detroit Delivery, Inc., decided that it was desirous of discontinuing, at least in major part, the service of said retail merchandise.

"(4) That for some months subsequent to the date of said agreement, Detroit Delivery, Inc., continued to perform operations for said retail merchants to-

gether with numerous other retail or wholesale establishments.

"(5) That Detroit Delivery, Inc., for the period 1945 through 1950 rendered service to retail and wholesale establishments in the city of Detroit and within the 8-mile radius beyond the city of Detroit and in addition thereto made available vehicles with and without drivers to various retail and wholesale establishments in the city of Detroit for service in the city of Detroit and an 8-mile radius thereof and beyond.

"(6) For the period 1951 to and including March, 1956, Detroit Delivery, Inc., performed little or no retail deliveries for Detroit wholesale or retail merchants beyond Detroit and the 8-mile exempt zone.

"(7) That Detroit Delivery, Inc., at the date of the hearing and for at least 11 years prior thereto had been actively engaged in the transportation of alcoholic liquors, beverages, supplies, equipment and property of the liquor control commission of the State of Michigan between various points within the southern peninsula of the State of Michigan.

"(8) That Detroit Delivery, Inc., had at all times, at least from 1944 up to the date of the hearing, equipment certified by this commission capable of being utilized in the so-called package or parcel delivery business.

"(9) That Detroit Delivery, Inc., had at all times for the period 1943 through 1956 tariffs on file with this commission covering the transportation of merchandise sold at retail or wholesale.

"(10) That Detroit Delivery, Inc., at all times for the period 1944 through 1956 was ready, willing and able to perform package or parcel delivery service under its certificate."

The question before the commission for its determination was whether the authority sought to be conveyed by defendant was automatically revoked by virtue of CL 1948, § 476.13 (Stat Ann § 22.546). Said section reads as follows:

"No abandonment of service. No common motor carrier authorized by this act to operate shall abandon or discontinue any service established under the provisions of this act without an order of the commission. Any certificate under which service is discontinued for more than 10 days without the previous order of this commission authorizing the same shall be deemed to be revoked without any action upon the part of the commission."

The opinion of the circuit judge indicates that in reaching his conclusion that the statute applied he accepted findings of fact made by the commission with reference to defendant's rendering the service contemplated by that portion of the certificated authority sought to be transferred. The record supports such findings. It is conceded that on or about the 1st of August, 1944, defendant sold a number of trucks and other property used in package transportation, indicating in connection with said sale that it was desirous of discontinuing, at least in major part, the delivery of retail packaged merchandise. However, it continued to render such service in a somewhat limited manner during the period from 1945 to 1951. It does not appear from the proofs that for the ensuing 5-year period it made retail deliveries for Detroit merchants beyond the city and the 8-mile exempt zone. It is equally apparent that defendant actively engaged in the transportation of alcoholic beverages and other property of the liquor control commission throughout the southern portion of the State. It was unquestionably true that defendant had equipment that might have been used in the package or parcel delivery business, but the finding of the commission does not indicate that it was so used. Defendant's vehicles, including a half-ton truck referred to in the record, were otherwise employed. It is likewise true that defendant during the period of time in question had tariffs on file with the

commission. The only conclusion that can be drawn in this respect is that such tariffs had been previously filed and defendant did not take the trouble to withdraw them, or to file new tariffs.

The conclusion of the 2 commissioners joining in the order that defendant during the period from 1944 through 1956 was ready, willing and able to render package delivery service was apparently based on the statement made by defendant's vice-president in the course of his testimony on the hearing as to why such business had not been carried on, as follows:

"It just didn't come to us. We were ready, willing, and able to do what we could."

What the witness meant by the latter part of the statement is not clear. It tends to raise the question as to what defendant could have done with reference to package transportation business requiring authority from the commission, in view of the admitted facts as to the use of its equipment in other services, the evident desire of defendant to discontinue said business, and its total failure to make any efforts to obtain it. The sale of equipment made by the agreement of August 1, 1944, was obviously made in contemplation of a change in the scope and character of its operations.

The witness in question further testified that at one time defendant had a substantial package and parcel delivery business, with bins and conveyor equipment, and employees to handle such packages. The use of such equipment was discontinued late in 1945, when it appears "the operation was cut pretty fine at that time." The practical situation existing is fairly disclosed by the following excerpt from the testimony of the witness:

"*Q.* Well now, so far as being ready, willing and able, from 1945 on you didn't have any parcel delivery trucks certificated, did you?

"*A.* Well, we wouldn't have to have a panel truck. We did have small trailers that can serve the purpose. It doesn't say with a package delivery that you've got to have a package truck.

"*Q.* I understand that, but you had no equipment comparable to what you had had prior to 1945, did you?

"*A.* No, sir.

"*Q.* And you had no bins or conveyors, and you had no employees engaged in performing that type of handling, did you?

"*A.* Well, as volume falls down you don't need that equipment.

"*Q.* I simply wanted to know, regardless of what equipment you had or didn't have, if you actually had any parcel or package delivery business outside of the Detroit exempt zone after 1945. Can't you answer that, Mr. Finnegan?

"*A.* I'm just trying to think. I couldn't say how much we had outside the zone.

"*Q.* Do you know of any at the present time?

"*A.* That's all of 12 years ago.

"*Commissioner Elmer:* You can't say how much? Did you have any outside the exempt zone at all?

"*The Witness:* I can't recall whether we did or not.

"*Q.* Am I correct that regardless of what business you may have received or may not have received in the intervening period, at least in 1950 you gave up any effort to secure any such business?

"*A.* Other than just keeping our name in the phone book, 'Detroit Delivery, Inc.'

"*Q.* That's all you did? Outside of that you didn't—?

"*A.* That's correct."

The conclusion indicated by the majority of the commission that defendant was ready, willing and able to continue the package delivery business under its certification from the commission is not consistent with the specific findings as to what defendant ac-

tually did. Such findings support the conclusion that there was in fact a discontinuance of the service within the meaning of the section of the statute above quoted. The self-serving and somewhat equivocal statement of the witness, defendant's vice-president, with reference to the ability and willingness of his company to do "what we could" in the service of package transportation, if such business had come to it, may not be given the effect of overriding the proofs as to what actually occurred. The circuit judge determined that there was a discontinuance of service within the meaning of the statute for a period of more than 10 days, that the statute was applicable, and that in accordance therewith the certificated authority sought to be transferred was revoked. We are in accord with such conclusion. It is fully supported by the record, including the findings of fact by the commission with reference to defendant's acts in connection with the business in question.

It is the position of appellants, in substance, that the circuit judge in passing on the case presented to him was bound by the conclusion of the commission that no discontinuance or abandonment of service under that portion of defendant's certificate sought to be transferred by it had occurred. The section of the motor carrier act under which such appeal was taken (CLS 1956, § 479.20 [Stat Ann 1957 Cum Supp § 22.585]) provides that within 30 days from the issuance of any order by the commission, and notice thereof, appeal may be taken to the circuit court of Ingham county. The bill of complaint filed in said court is required to specify the grounds upon which it is claimed that the order is unreasonable or unlawful. Provision is made for the introduction of "original evidence" in addition to that taken before the commission, and the court is expressly given jurisdiction and empowered "to affirm, vacate, or set aside the order of the commission in

whole or in part and to make such other order and decree as the court shall decide to be in accordance with the facts and the law."

The provision above quoted was first incorporated in the motor carrier act at the legislative session of 1939 (PA 1939, No 261). Prior thereto the statute had provided* in terms that orders of the commission thereunder should be subject "to review by the Supreme Court of the State both as to the law and the facts." In *Lafayette Transfer & Storage Co.* v. *Michigan Public Utilities Commission,* 287 Mich 488 (28 PUR NS 455), it was held that the method of review thus provided was exclusive and that the provision for appeal to the circuit court of Ingham county, as incorporated in PA 1919, No 419,† creating the public utilities commission, the predecessor of the present commission, could not be invoked by one claiming to have been aggrieved by the commission's order. This case was decided February 2, 1939. During the same year the legislature enacted PA 1939, No 3, creating the present commission and defining its powers and duties. It was specifically provided therein that:

"Any order or decree of the Michigan public service commission shall be subject to review in the manner now provided by law for reviewing orders and decrees of the Michigan railroad commission or the Michigan public utilities commission."‡

This provision was referred to by Justice POTTER in his opinion in *Todd* v. *Hull,* 288 Mich 521, 531, with the comment that the purpose of the legislature was to make orders of the commission relating to motor carriers on the public highways reviewable

* See PA 1933, No 254, art 5, § 20 (CLS 1935, § 11352–50, Stat Ann § 22.585).—REPORTER.

† See, specifically, section 9 (CL 1948, § 460.59 [Stat Ann § 22.9]).—REPORTER.

‡ CL 1948, § 460.4 (Stat Ann 1957 Cum Supp § 22.13 [4]).—REPORTER.

in equity, and to "obviate the rule of *Lafayette Transfer & Storage Co.* v. *Michigan Public Utilities Commission*, 287 Mich 488." The amendment of the motor carrier act at the same legislative session, providing for review of commission action by the circuit court of Ingham county, leaves no doubt as to the intent of the legislature.

It has been repeatedly held by this Court that the public service commission is a *quasi*-judicial body, and that its predecessors were of like character. In the performance of the functions vested in it by law it is required to pass on various matters, some involving legislative and administrative powers, and still others requiring the exercise of a *quasi*-judicial authority. With reference to such questions the provisions of article 4 of the State Constitution (1908), relating to the division of the powers of government, must be borne in mind. Section 2 of said article specifically provides that, except as provided in the Constitution, no person belonging to one department shall exercise the powers belonging to another. Said provisions together with article 7, § 4, relating to the jurisdiction of the Supreme Court, were considered in *In re Consolidated Freight Co.*, 265 Mich 340 (4 PUR NS 397), in which an appeal was taken to this Court in the nature of certiorari from an order of the public utilities commission granting a certificate of public convenience and necessity to a common carrier of freight by motor vehicle. Discussing the nature of the writ of certiorari, and the constitutional restrictions on jurisdiction, it was held that it was not within the power of the legislature to invest this Court with authority to pass on questions of fact in a proceeding brought before it to review an order of the commission. On the record presented it was held that the issuance of the permit was supported by facts disclosed at the hearing, and possibly by an investigation of the

commission. The order was, in consequence, affirmed.

Of special significance are the comments made in the case with reference to the issues involved in the acts of governmental agencies. Attention was directed (p 351) to the fact that the fixing of rates for public utilities is a legislative rather than a judicial function. However, it was recognized in *Michigan Central R. Co. v. Wayne Circuit Judge,* 156 Mich 459, as well as in other decisions in this State and elsewhere, that the legislature may vest in the court authority to determine if rates so fixed are reasonable and to declare them invalid if found to be unreasonable. In other words, while rate fixing is legislative, declaring rates invalid by virtue of legislative enactment imposing the requirement that they shall be reasonable is judicial in nature. The comment of Justice POTTER, who had been for a number of years a member of the public utilities commission, is of interesting significance (*In re Consolidated Freight Co., supra,* 343):

"There is a distinction between legislative and judicial acts. The legislature makes the law—courts apply it. To enact laws is an exercise of legislative power; to interpret them is an exercise of judicial power. To declare what the law shall be is legislative; to declare what it is or has been is judicial. The legislative power prescribes rules of action. The judicial power determines whether, in a particular case, such rules of action have been transgressed. The legislature prescribes rules for the future. The judiciary ascertains existing rights."

In the same case Justice NORTH, after referring to the fact that the public utilities commission and similar commissions are *quasi*-judicial bodies, said (p 349):

"They are empowered to perform certain acts and make certain determinations which in their nature

are *quasi*-judicial. But the Constitution vests all judicial power in the courts, and it follows that determinations of this character by the respective commissions are not final, and cannot be made so by legislation. Instead, in so far as questions of law are involved, determinations of such *quasi*-judicial bodies are reviewable by the courts. This practice is thoroughly established in this jurisdiction. It has become a fixed feature of our system of jurisprudence, and we should not now depart therefrom."

Counsel on both sides have referred to *Giaras* v. *Michigan Public Service Commission*, 301 Mich 262. Involved in said case was an order of the public service commission denying to plaintiff authority to operate, as a common carrier, motor vehicle freight service between certain cities. On appeal to circuit court plaintiff's bill of complaint was dismissed, and from the decree entered he appealed to this Court. The question presented to the commission on the hearing of plaintiff's application was whether public convenience and necessity would be served by issuing the permit sought. Obviously such question was legislative in character, as this Court had recognized in prior decisions, including *In re Consolidated Freight Co., supra*. On the conflicting proofs before it the commission held against plaintiff, concluding that he had not made a showing justifying the granting of his application. On appeal to the circuit court it was held that the determination reached was supported by the proofs, and that plaintiff had not established the unreasonable and unlawful character of the order from which he had appealed. In affirming the decree entered, this Court said, in part (p 269) :

"It is a well-established principle of law that if there is competent evidence presented to the commission in favor of granting such a certificate as well as evidence in opposition thereto, the court will not

substitute its opinion and judgment for that of the commission. To declare an order of the commission unlawful there must be a showing that the commission failed to follow some mandatory provision of the statute or was guilty of an abuse of discretion in the exercise of its judgment. In the case at bar the trial court found that plaintiff had not established that the order appealed from was unreasonable or unlawful in character. We think the record supports such a finding."

In accordance with the general rule, the language of the Court in the *Giaras Case* must be construed in the light of the question under consideration, bearing in mind that the action of the commission which plaintiff sought to have set aside was legislative in character rather than *quasi*-judicial. The ultimate question was not the determination of existing rights but, rather, what should be done with reference to desired future action. The testimony, as this Court indicated in its opinion, supported the order made.

In *Yankoviak* v. *Public Service Commission,* 349 Mich 641, the question involved in the hearing before the commission was of like nature to that in the *Giaras Case.* On the basis of the proofs the commission granted authority to Tank Transport, Inc., to extend its operations as a contract motor carrier. Plaintiff opposed the application and filed his bill of complaint in the circuit court of Ingham county asking that the order entered be set aside. Following a hearing before the circuit judge, decree was entered affirming the commission's order on the ground that it was sustained by competent proofs. On appeal, this Court held that the commission's conclusions, including the finding that the proposed operation of the appellant would not impair the efficient public service of any common or contract carrier then adequately serving the area (p 650), "were

based upon sufficient competent evidence, were properly upheld by the circuit court, and will not be disturbed by this Court."

As indicated, the issues before the commission in the above cases required the exercise of delegated *legislative* authority, pursuant to statutory provisions creating the commission and defining its powers and duties. In the case at bar the problem was not legislative or administrative in nature but *quasi* judicial. A like situation was presented in *George F. Alger Company* v. *Public Service Commission,* 339 Mich 104. The commission had issued to intervening defendant Kauffman authority, as a limited common carrier, to transport specified articles, which authority he desired to transfer in part to intervening defendants Beaver & Wells. Kauffman joined with said defendants in an application for permission to transfer that portion of his authority relating to the transportation of building materials. The commission approved the application and on June 29, 1951, issued its order permitting the transfer. Thereafter plaintiff filed with the commission a petition asking that the order be set aside and that the certificated authority of Beaver & Wells be declared revoked under CL 1948, § 476.13 (Stat Ann § 22.546), above quoted. Following a hearing plaintiff's application was denied by 2 members of the commission who concluded that the section of the motor carrier act invoked by plaintiff did not apply under the facts. The proofs indicated that Beaver & Wells did not exercise the right to carry on the business of transporting building materials, as assigned by Kauffman and approved by the commission, between June 29, 1951, and August 6th following. Apparently some question arose with reference to the filing of tariff rates and said commissioners concluded that such matters constituted a reasonable explanation of the failure of Beaver & Wells "to institute service until

August 6, 1951, and to constitute good and sufficient cause for such failure." The determination of the matter rested on the conclusion as to the interpretation and application of the statute. Involved was the exercise of *quasi*-judicial powers.

One member of the commission disagreed with the conclusion of his associates with reference to the application of the section of the motor carrier act in question. On appeal to the circuit court of Ingham county the order entered by the 2 commissioners was reversed and set aside, the circuit judge concluding that the statute applied, that under the facts in the case Beaver & Wells had discontinued the service covered by the certificated authority, transferred to them by Kauffman, for a period of more than 10 days without the consent of the commission, and that, in consequence, the certificate issued to them was revoked by operation of law. On appeal, this Court affirmed the action of the circuit judge.

The opinion in the *Alger Case,* which was signed by all members of the Court, distinguished the situation presented from that before the Court in the *Giaras Case,* pointing out that the question before the circuit judge was a judicial one. On such an issue the courts in the performance of their duty must act without being circumscribed by the opinions and conclusions of a commission or other agency first exercising a *quasi*-judicial authority in the premises. In the *Alger Case,* as in the case at bar, it was claimed that the circuit judge had substituted his judgment on questions of fact decided by the commission, and that he was in error in so doing. In discussing such claim the opinion pointed out in clear and unmistakable language that the commission's order was based on a construction of the statute and the view that the application of the statute would work a hardship and would be unreasonable. That Beaver & Wells had not conducted operations under the certificate

granted by the commission for a period in excess of 5 weeks was clearly shown by the record. That the commission had acted on the basis of the legal conclusions of the 2 members joining in the order was obvious. It was further pointed out that whether the transferees of the certificated authority intended to give up any rights thereunder was immaterial in determining whether the statute applied. The legislative mandate is clearly expressed, and there is no chance for difference of opinion as to the intent. We must construe the statute as it reads and, as pointed out in the opinion in the *Alger Case,* if it in some instances operates too harshly the remedy is with the legislature and not with the courts.

The decision in the *Alger Case,* as set forth in the unanimous opinion of the Court therein, affords a clear and unequivocal holding as to the functions of the court in reviewing *quasi*-judicial action by the public service commission. The provisions of the statute with reference to the review in the circuit court of the orders of the commission indicate the legislative viewpoint that in passing on judicial matters the exercise of the authority of the court may involve a consideration of the facts in order that the court may make such decree as shall be "in accordance with the facts and the law." Generally speaking, the exercise of powers vested in the courts, and the performance of the duties imposed thereon, require, as necessarily incidental to such performance, the determination of facts.

In other instances the legislature has exercised its authority to provide for a review of the orders of administrative boards and commissions, and to indicate the scope thereof. Thus in CLS 1956, § 421.38 (Stat Ann 1957 Cum Supp § 17.540), relating to appeals from the appeal board of the employment security commission, it is provided that circuit courts may "review questions of fact and law on the record

made before the referee and the appeal board," but that the appeal board may be reversed on a question of fact only when the decision is contrary to the great weight of the evidence. The plain language of the statute contemplates that the court reviewing the order of the appeal board shall give proper consideration to the proofs. Under CL 1948, § 205.9 (Stat Ann 1950 Rev § 7.657[9]) a taxpayer who pays under protest the amount found due by the State board of tax appeals may file a claim against the State in the court of claims for the recovery of the money so paid, thus exercising the right to litigate the matter in that court. The revenue department is given the right to appeal to the circuit court of Ingham county on questions of law only.

Counsel for appellants have called attention to *Musslewhite* v. *State Corporation Commission,* 61 NM 97 (295 P2d 216). There the defendant commission issued an order revoking a certificate of public convenience and necessity that had been issued to plaintiff on the ground that service thereunder had not been rendered in accordance with the certificate and the statutory provisions under which it had been issued. The statute involved forbade common motor carriers authorized to operate to abandon or discontinue service without an order of the commission, and also forbade abandonment, except for causes beyond control, unless notice had been filed with the commission at least 30 days prior to discontinuance of service. It was further declared that upon the discontinuance of service the certificate of public convenience and necessity should be canceled by the commission. From the order of cancellation made under the statute plaintiff appealed to the district court. It was there held that under the proofs the action of the commission was unlawful and unreasonable, and should not be enforced. On appeal, the

supreme court, in a 3 to 2 decision, affirmed the judgment of the district court.

The proofs in the above cited case indicated that plaintiff had but 1 truck registered in New Mexico, that he had performed no transportation service in that State since the issuance of the certificate granted to him, that he did not maintain any shop or terminal within the State, and that he did no advertising. The majority of the court took the view that nonuser of the authority granted by the certificate did not constitute either abandonment or discontinuance. The 2 members of the court dissenting from the holding emphasized certain facts appearing from the record with reference to the acts of the plaintiff, concluding therefrom that the certificate should be revoked. It will be noted that the statutory provisions before the court varied materially from those of this State involved in the instant case. Revocation of a certificate granted to a motor carrier required affirmative action by the commission instead of being automatic as provided by the Michigan statute. The relative merits of the divergent views expressed in the opinions in the case do not call for comment. The significant fact with reference to the decision is that the court, and all members thereof, recognized the duty to pass on the judicial question presented and in so doing to give proper consideration to the facts. Obviously a proper conclusion as to the application of the statutory provisions involved required reference to the proofs.

In the case at bar the basic question at issue was whether the statutory provision, declaring that a certificate under which operations have been discontinued for more than a 10-day period without the previous order of the commission shall be deemed revoked, was applicable. The question presented to the circuit court under the act of the legislature was a judicial one, to be determined with

reference to the language of the statute and the facts established by the proofs. The appeal did not involve an administrative or legislative function of the commission, but, rather, the determination of a controversy requiring the exercise of *quasi*-judicial authority. Acting pursuant to his constitutional and statutory powers the circuit judge determined the issue on the record before him. We are in accord with his conclusions, and the decree entered should be affirmed. The question being one of public concern, no costs are allowed.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.

KAVANAGH, J., took no part in the decision of this case.