ASSOCIATED TRUCK LINES, INC., *v.*
PUBLIC SERVICE COMMISSION.

DECISION OF THE COURT.

1. PUBLIC SERVICE COMMISSION—CERTIFICATE OF PUBLIC CONVENIENCE
AND NECESSITY—REDETERMINATION.
Order of circuit court reversing order of public service commission
authorizing transfer of certificate of public convenience and
necessity is ordered reversed and cause ordered remanded to
commission for reopening proofs and redetermination.

DISSENTING OPINION.
KELLY and O'HARA, JJ.

2. PUBLIC SERVICE COMMISSION — CARRIERS — ORDERS — BURDEN OF
PROOF.
*The party complaining of an order of the public service com-
mission has the burden of showing by clear and satisfactory
proof in the circuit court that the order complained of is
unlawful or unreasonable (CLS 1961, § 479.20).*

3. CARRIERS—MILEAGE REPORTS.
*Motor carriers domiciled in this State must report for the purpose
of assessing ton-mile taxes all of their mileage in this State*

---

REFERENCES FOR POINTS IN HEADNOTES
[1]  13 Am Jur 2d, Carriers § 91 *et seq.*
[2]  13 Am Jur 2d, Carriers § 98 *et seq.*
[3]  7 Am Jur 2d, Automobiles and Highway Traffic § 69.
     13 Am Jur 2d, Carriers § 27.
[4]  2 Am Jur 2d, Administrative Law § 473 *et seq.*
[5–9, 15–24, 29, 32, 33]  13 Am Jur 2d, Carriers § 95 *et seq.*
     43 Am Jur, Public Utilities and Services § 21.
[10, 11]  13 Am Jur 2d, Carriers § 20 *et seq.*
[12, 13]  13 Am Jur 2d, Carriers § 77 *et seq.*
[14, 31]  20 Am Jur 2d, Courts § 183 *et seq.*
[25]  5 Am Jur 2d, Appeal and Error § 1009 *et seq.*
[26, 27, 31]  2 Am Jur 2d, Administrative Law § 610 *et seq.*
[28]  13 Am Jur 2d, Carriers § 74 *et seq.*
[30]  2 Am Jur 2d, Administrative Law § 765.
[34]  2 Am Jur 2d, Administrative Law §§ 455–457.

*for both interstate and intrastate traffic (CL 1948, § 478.4; PA 1933, No 259, §§ 4a, 5a, as added by PA 1963, No 182).*

4. ADMINISTRATIVE LAW—CONSTRUCTION OF ORDERS.

*The Supreme Court accords the statutorily created body entrusted with motor carrier regulation the plain import of the language used in its order.*

5. CARRIERS—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY.

*Order of public service commission finding that defendant intervenor had not discontinued its service as a motor carrier under its certificate of public convenience and necessity was not revoked by operation of law, held, proper (CL 1948, § 476-.13).*

6. SAME—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY—ABANDONMENT.

*An intent to abandon furnishing service as a motor carrier under a certificate of public convenience and necessity is a proper test only where abandonment is the issue (CL 1948, § 476.13).*

7. SAME—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY—CONTINUED SERVICE—EVIDENCE.

*Proof of continued service in interstate commerce does not establish continued service under certificate of public convenience and necessity of motor carrier under statutory provision that no common motor carrier authorized by the act should abandon or discontinue service established under the act, since interstate service may not be established under a State statute (CL 1948, § 476.13).*

8. SAME—INTERSTATE COMMERCE.

*The establishment of service by a motor carrier in interstate commerce is dependent upon the grant of a certificate of public convenience and necessity by the interstate commerce commission to which Congress delegated such authority.*

9. SAME—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY—REVOCATION.

*The fact that a motor carrier's resumption of suspended service might cause overcrowding of service to those who had supplied the transportation service to shippers during the suspension is not a factor which the public service commission may consider in determining whether the carrier has so discontinued its service as to effect a revocation of its certificate of public convenience and necessity as a matter of law (CL 1948, § 476-.13).*

10. PUBLIC SERVICE COMMISSION—MOTOR CARRIERS—STATUTES.

*The public service commission exercises only those powers relative to motor carriers expressly delegated to it by statute and has no broad grant of authority to establish a State transportation policy.*

11. SAME—MOTOR CARRIERS—STATUTES.

*It is not for the Supreme Court to determine the wisdom or efficacy of the legislative limitations upon the power of the public service commission by the failure to grant the commission a broad grant of power to establish a State transportation policy with respect to motor carriers.*

12. CARRIERS—MOTOR CARRIERS—OPERATION.

*There must of necessity be a consignor, a consignee, and a carrier, in order to "operate" within the meaning of the motor carrier act.*

13. SAME—NEW SERVICE—CONSIGNOR—COMMODITIES—POINT OF ORIGIN OR DESTINATION.

*A* new service *is authorized under the motor carrier act if a carrier, which prior to acquisition of rights, can thereafter serve a consignor or a consignee it could not previously have served, or can transport a commodity it could not previously have carried, or can serve an origin or destination point it could not previously have served.*

14. COURTS—OVERRULED CASES.

*The case of* George F. Alger Company *v.* Public Service Commission, *339 Mich 104, is overruled to avoid confusion as to its citable value, where, although a correct statement of law, it was a misapplication of that law to the facts in that case.*

15. PUBLIC SERVICE COMMISSION—MOTOR CARRIERS—FINDING OF FACT —ABANDONMENT—DISCONTINUANCE OF SERVICE.

*The public service commission's order finding that motor carrier holder of certificate of public convenience and necessity had not abandoned or discontinued service contrary to provisions of the motor carrier act constitutes a specific finding of fact that the statute was not violated (CL 1948, § 476.13; CLS 1961, § 479.20).*

16. SAME—MOTOR CARRIERS—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY—UNLAWFUL.

*Unlawful, as the term is used in provision of statute giving circuit court jurisdiction to review public service commission's order pertaining to common motor carrier's certificate of public convenience and necessity and requiring a complainant to show*

*by clear and satisfactory evidence that the order be so characterized, means an erroneous interpretation or application of law to properly established facts, or permissible inferences from facts (CLS 1961, § 479.20).*

17. Same—Motor Carriers—Certificate of Public Convenience and Necessity—Unreasonable.

Unreasonable, *as the term is used in provision of statute giving circuit court jurisdiction to review public service commission's order pertaining to common motor carrier's certificate of public convenience and necessity and requiring a complainant to show by clear and satisfactory evidence that the order be so characterized, being a word of art in our jurisprudence, means arbitrary, capricious, or totally unsupported by admissible and admitted evidence (CLS 1961, § 479.20).*

18. Same—Motor Carriers—Continuance of Service.

*Proof admitted before public service commission that the carrier had continued to file its mileage reports, certificated its equipment, and had in force and effect proper tariffs, is some evidence that intrastate service had not been discontinued (CL 1948, §§ 476.13, 478.4; CLS 1961, § 479.20).*

19. Same—Motor Carriers—Circuit Court—Finding of Fact—Evidence.

*The circuit court on review of public service commission's order relative to revoking common motor carrier's certificate of public convenience and necessity may not make an original inference of fact that the carrier had discontinued the service for the statutory period, where the commission had specifically made a finding of fact of statutory nondiscontinuance of service and there was evidence supporting either finding (CL 1948, §§ 476.13, 478.4; CLS 1961, § 479.20).*

20. Carriers—Motor Carriers—Certificate of Public Convenience and Necessity—Abandonment—Discontinuance.

*The terms abandon and discontinue, as used in provisions of the motor carrier act relative to revocation of a certificate of public convenience and necessity are not treated as synonymous (CL 1948, § 476.13).*

21. Same—Certificate of Public Convenience and Necessity—Intent.

*A common motor carrier's outright discontinuance of service required under its certificate of public convenience and necessity for more than 10 days, without previous order of the public service commission, is violative of the statute irrespective of intent (CL 1948, § 476.13).*

22. PUBLIC SERVICE COMMISSION—MOTOR CARRIERS—CERTIFICATE OF
    PUBLIC CONVENIENCE AND NECESSITY—INFERENCES—CIRCUIT COURT.
    *Inferences of fact from testimony adduced in proceeding to de-*
       *termine whether a common motor carrier had discontinued its*
       *service under a certificate of public convenience and necessity*
       *are the initial prerogative of the public service commission, not*
       *the circuit court on review of the order of the commission,*
       *since the commission observed the witnesses, and was the judge*
       *of their credibility (CLS 1961, § 479.20).*

23. CARRIERS—MOTOR CARRIERS—REVOCATION OF CERTIFICATE OF PUB-
    LIC CONVENIENCE AND NECESSITY—EVIDENCE.
    *Fact that no shipments in intrastate commerce were made for a*
       *period in excess of 10 days, or that common motor carrier*
       *discouraged a certain type of traffic and ships none for a 10-*
       *day period, does not, alone, constitute conclusive proof of dis-*
       *continuance of service under certificate of public convenience*
       *and necessity so as to effect its revocation as a matter of law*
       *(CL 1948, § 478.13).*

24. PUBLIC SERVICE COMMISSION—MOTOR CARRIERS—CERTIFICATE OF
    PUBLIC CONVENIENCE AND NECESSITY.
    *Complainants who sought to have common motor carrier's cer-*
       *tificate of public convenience and necessity declared void held,*
       *under record presented, not to show by clear and satisfactory*
       *evidence that the order of the public service commission, was*
       *finding service had not been abandoned or discontinued un-*
       *reasonable (CL 1948, § 476.13; CLS 1961, § 479.20).*

25. COSTS — PUBLIC SERVICE COMMISSION — CIRCUIT COURT — MOTOR
    CARRIERS — CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY —
    CONSTRUCTION OF STATUTES.
    *No costs are allowed on appeal in suit to declare motor carrier's*
       *certificate of public convenience and necessity void, where cir-*
       *cuit court is directed to enter its order affirming, instead of re-*
       *versing, the order of the public service commission, and con-*
       *struction of statutes is involved (CLS 1961, § 479.20).*

SEPARATE OPINION.

T. M. KAVANAGH, C. J., and SOURIS and ADAMS, JJ.

26. ADMINISTRATIVE LAW—FINDINGS OF FACT—EVIDENCE—REVIEW BY
    COURT.
    *Generally, administrative findings of fact are conclusive upon a*
       *reviewing court, if supported by evidence.*

27. SAME—FINDINGS OF FACTS—MISAPPLICATION.

   *A reviewing court may set aside an administrative order that is based upon a misapplication by an administrative agency of found facts to the applicable law.*

28. CARRIERS—MOTOR CARRIERS—PUBLIC INTEREST—REGULATION.

   *The business of motor carriers of passengers and property is affected with a public interest and a reason for regulation of them by the public service commission is to insure adequate motor transportation facilities (CL 1948, § 479.1).*

29. SAME—MOTOR CARRIERS—VOLUNTARY CURTAILMENT OF SERVICE.

   *Voluntary curtailment of service by a motor carrier that is so drastic that no services are rendered for periods in excess of 10 days automatically revokes the certificate of public convenience and necessity and confers upon the commission the power to authorize other applicants to perform such service in accordance with needs of the public as determined by the commission (CL 1948, § 476.13).*

SEPARATE OPINION.

SMITH, J.

30. COURTS—OVERRULED CASES.

   *The case of George F. Alger Company v. Public Service Commission, 339 Mich 104, is overruled to avoid confusion as to its citable value, where, although a correct statement of law, it was a misapplication of that law to the facts in that case.*

31. CARRIERS—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY—DISCONTINUANCE OF SERVICE.

   *A common motor carrier's outright discontinuance of service required under its certificate of public convenience and necessity for more than 10 days, without previous order of the public service commission, is violative of the statute irrespective of intent (CL 1948, § 476.13).*

32. SAME — CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY — ABANDONMENT OF SERVICE.

   *It is necessary to show an intent to abandon service under a motor carrier's certificate of public convenience and necessity in order to use abandonment as a basis for revocation of the certificate (CL 1948, § 476.13).*

33. ADMINISTRATIVE LAW—OPINIONS—ORDERS.

   *Opinions and orders of administrative agencies ought to reflect clearly the application of the expertise which such bodies possess.*

34. PUBLIC SERVICE COMMISSION — MOTOR CARRIERS — FINDINGS OF FACT.

*A circuit court's finding that the public service commission had erred in applying the law to the facts it found would not permit the court to make a new and independent finding of fact but he must remand the matter with respect to an order relative to a motor carrier's certificate of public convenience and necessity, to the commission for redetermination by it in the light of the law set forth in the court's opinion (CL 1948, § 476.13).*

Appeal from Ingham; Salmon (Marvin J.), J. Submitted February 4, 1965. (Calendar No. 46, Docket No. 50,670.)  Decided March 8, 1966.

Bill of complaint by Associated Truck Lines, Inc.; Earl C. Smith, Inc.; Great Lakes Express Company; Ogden & Moffett Company; Interstate Motor Freight System, Inc.; Dundee Truck Line, Inc.; Intercity Trucking Service, Inc.; United Trucking Service, Inc.; C. H. Rumpf & Sons Truck Lines, Inc.; W. Ford Johnson, Inc.; and H. & G. Cartage Company, all Michigan corporations, against Michigan Public Service Commission to set aside an order of defendant commission, to find that the certificate of convenience and necessity of Yellow Transit Freight Lines, Inc., be revoked, and that defendant commission be enjoined from authorizing or permitting reinstitution of operations by Yellow Transit Freight Lines, Inc., or its transferee, under the certificate of convenience and necessity. Jones Transfer Company intervened as plaintiff. Yellow Transit Freight Lines, Inc., and Central Transport, Inc., intervened as defendants. Judgment for plaintiffs. Intervening defendants appeal. Reversed and remanded for entry of order remanding matter to' Public Service Commission for reopening proofs and redetermination.

*Matheson, Dixon & Bieneman (John M. Veale* and *Joseph Lavey,* of counsel), for plaintiffs other than Jones Transfer Company.

*Sullivan, Eames, Moody & Petrillo (Robert A. Sullivan* and *Frank J. Kerwin, Jr.,* of counsel), for intervening plaintiff Jones Transfer Company.

*Clark, Klein, Winter, Parsons & Prewitt (Arthur P. Boynton* and *Alan M. Shaver,* of counsel), for intervening defendant Yellow Transit Freight Lines, Inc.

*Snyder, Loomis & Ewert (George W. Loomis* and *William D. Parsley,* of counsel), for intervening defendant Central Transport, Inc.

O'HARA, J. (*dissenting, for remand to affirm order of commission*). This appeal from the Ingham county circuit court reviews an order of that court which vacated and reversed a finding of the Michigan public service commission.

The finding of the commission was:

"We are not convinced, however, drastic though it may have been, that the action of the carrier was such as to result in abandonment. * * * Abandonment or discontinuance should only be found as a result of more positive action than is here indicated. * * *

"Accordingly, we find that Yellow Transit Freight Lines, Inc., has not abandoned or discontinued service contrary to the provisions of the motor carrier act."

The circuit court made a contrary finding. The substance thereof is herewith set forth:

"Obviously if a carrier deliberately is avoiding intrastate traffic the time eventually arrives when it

will not be tendered such movements. The logical inference is that this is what happened in this case. Its conduct in our opinion was equivalent to an outright refusal."

The involved statute[1] provides:

"No common motor carrier authorized by this act to operate shall abandon or discontinue any service established under the provisions of this act without an order of the commission. Any certificate under which service is discontinued for more than 10 days without the previous order of this commission authorizing the same shall be deemed to be revoked without any action upon the part of the commission."

Appellee-carriers, filed on May 17, 1961, a complaint requesting that the commission enter upon an investigation of the nature of the operation conducted intrastate by Yellow,[2] and that it enter its order finding that specific segments of Yellow's certificate of public convenience and necessity were revoked by operation of law. Request was further made to amend the certificate by eliminating therefrom alleged dormant authority between specified Michigan points. Yellow answered. The matter was set for hearing. For 3 days, the commission took testimony and received exhibits. Thereafter, it made its determination. It is record-supported that a policy claimed by appellees to have resulted in the abandonment or discontinuance of service came to their attention when Yellow made overtures to them to purchase their intrastate certificate and some of their equipment. Appellees claim that after investigation of Yellow's operation, they were convinced the authority had lapsed and they discontinued negotiations for purchase.

A hearing on appellees' complaint was, in part, held October 25, 1961, and adjourned for further

---

[1] CL 1948, § 476.13 (Stat Ann § 22.546).
[2] Yellow Transit Freight Lines will be so designated herein.

hearing. Shortly thereafter, appellees amended their pending complaint to allege that substantially all of Yellow's intrastate service in Michigan had been discontinued.

Further hearings were held before the commission December 20 and 21, 1961, and the record was supplemented by a deposition taken January 29, 1962.

Meanwhile, Yellow had interested another potential purchaser, Central Transport, Inc. Satisfactory terms apparently were agreed upon and an application to transfer Yellow's authority to Central was filed with the commission. The proposed transfer was included in the commission's bulletin[3] of May 28, 1962. Counsel for appellees instanter wired a protest and requested hearing on the question of the alleged dormancy. We find no hearings held, nor other supplements to the record, after the deposition taken January 29, 1962.

The day following their telegraphic protest to the transfer application, appellees filed a bill of complaint in the Ingham county circuit court alleging, on information and belief, that the commission intended, without prior hearing, to approve the transfer and permit the institution of service by Central Transport over Yellow's intrastate route. They accompanied their bill with a prayer for injunctive relief. A temporary restraining order was issued by the court on June 4, 1962. On December 24, 1963, the circuit court entered a judgment wherein it decreed that the certificate of public convenience and necessity here involved was "void, invalid, and revoked by operation of law." From that judgment, appeal was taken.

While the immediate issue here is validity or invalidity of the concerned certificate, the superseding legal principle is the nature and scope of judicial

---

[3] A commission publication roughly comparable to a court's docket.

review by the Ingham county circuit court of orders of the Michigan public service commission.

The appeal procedure governing the instant case provides that "the burden of proof shall be upon the complainant [appellees here] to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable." This legislative prescription is not rendered any easier to compound when it is complicated by the following quixotic language:[4]

"Any party to such suit may introduce *original evidence* in addition to the transcript of evidence offered to said commission. * * * If, upon the trial of such action, evidence shall be introduced which is found by the court to be different from that offered upon the hearing before the commission, or additional thereto, the court, before proceeding to render judgment, unless the parties in *such action stipulate in writing to the contrary,* shall transmit a copy of such evidence to the commission. * * * The commission may, upon receipt and consideration of such evidence alter, modify, amend, or rescind its order and shall report its action thereon to the court within 10 days from the receipt of such evidence." (Emphasis supplied.)

A circuit court is hard put to apply traditional concepts of administrative review to a proceeding in which it is also empowered to receive original evidence.

Working with the tools at hand, however, we review the circuit court's opinion and judgment. Under the statute it was the burden of plaintiffs-appellees to show, by clear and satisfactory evidence, that the order of the commission was unlawful or unreasonable. No reference in this statute is made to distinctions between questions of "law" and of "fact" or to the "conclusiveness" of the latter

---

[4] CLS 1961, § 479.20 (Stat Ann 1963 Cum Supp § 22.585).

when found by the commission. No additional testimony was taken in the circuit court. We therefore must determine whether the transcript of testimony and the exhibits which made up the record before the commission contained "clear and satisfactory evidence" which showed the commission's order to be unlawful or unreasonable. The burden of proof of so showing is statutorily upon complainants-appellees. To sustain this burden, they rely in principal part on their claim that Yellow discontinued service under its certificate for more than 10 days without prior commission approval.

In support of this claim they rely both on exhibits received in evidence before the commission, and testimony. The purport of the exhibits is that after January 1, 1961, Yellow had so curtailed its intrastate short-haul service that it was virtually nonexistent, and that for the months of June and July of that year no intrastate shipments were originated in any of its Michigan terminals. The oral testimony relied on consists of admissions elicited on cross-examination of Yellow's witnesses, testimony of former employees thereof and that of employees of competing carriers, all of which it is claimed established incontrovertibly that appellant Yellow did as a matter of fact discontinue its Michigan intrastate short-haul operations.

*Per contra,* Yellow says, in effect, it did drastically curtail its intrastate operations which were shown by an analysis to have been unprofitable; it did adopt a studied management policy to discourage this type of traffic; it closed certain of its terminals which were duplications of facilities of purchaser-Central Transport; it arranged with other carriers to pick up any short-haul intrastate shipments which were tendered it, but it neither abandoned nor discontinued service within the meaning of the statute.

One of the complications of the instant case arises from the method of reporting mileage by certificated carriers to the intervening appellant-commission. Under its requirement, Michigan domiciled carriers must report for the purpose of assessing ton-mile taxes all of their Michigan mileage, both in inter- and intrastate traffic.[5] It is the claim of appellees that the mileage reported by Yellow was for interstate shipments, while appellants contend that by reason of the mixing of intra- and interstate freight in the same unit, the mileage reported could as well be found to be for intrastate mileage as for interstate.

That the able and experienced examiner for the commission was aware of the conflict is disclosed by the following excerpt from the record. Lawrence Knapp, called as a witness for complainant-appellees, testified:

"*Q.* The mileage reports which you inspected, Mr. Knapp, did they contain any breakdown between inter- and intrastate miles operated in Michigan?

"*A.* No, there is no way of segregating intrastate miles, [and] that which is reported for wholly intrastate operations between points in Michigan, and that interstate operation which may have an origin or destination in Michigan. Actually, it is conceivable that all miles reported on here could have been interstate.

"*Examiner King.* Or could be intrastate?

"*A.* Or intra."

Considerable time was devoted by the experienced trial judge as to whether the question before the commission was one of abandonment or discontinuance. That this question was also considered im-

---

[5] CL 1948, § 478.4 (Stat Ann 1961 Cum Supp § 22.562). Repealed and superseded by PA 1933, No 254 §§ 4a, 5a, as added by PA 1963, No 182 (CL 1948, §§ 478.4a, 478.5a [Stat Ann 1963 Cum Supp § 22.563(1), 22.564(1)]).—REPORTER,

portant by all the able regulatory counsel in the case is disclosed by these excerpts from the pretrial summary:

Mr. Veale (for appellees other than Jones Transfer), after stating his legal position that no subjective intent need be shown where the claim is discontinuance rather than abandonment, said:

"The second position would be that if the order is viewed as any factual finding that there was no discontinuance, which we don't believe it could be, but if it were viewed in that light that it is not supported by any evidence. * * *

"*Mr. Elmer* [*for appellee Jones Transfer*]. The only issue of fact really that I think is contested— I think all the parties are in agreement as to the exhibits that were offered, no one challenges the credibility of the exhibits—but there is an issue of fact as to what some of the exhibits show. One of the exhibits, for example, was offered by the respondent Yellow Transit, the intervening defendant here, indicating some operations in certain areas in Michigan which they contended were intrastate commerce and would thus support their argument that the operations had in fact been conducted during certain periods of time, whereas evidence was offered by the plaintiffs, including intervening plaintiff, to show that these operations were in fact operations of interstate commerce conducted under authority issued by the interstate commerce commission and thus would not support an allegation of operation under the Michigan authority. *That in my mind really is the only issue of fact that there is.* * * *

"*Miss Boersma.* I can't think of any other issue of fact and I don't know whether that is. I doubt that that is an issue of fact as much as an issue of law in this instance. * * *

"*Mr. Elmer.* Well, I say that there is no argument as to the exhibits. There is an argument as to the interpretation. * * *

"*Mr. Gibson* [*for defendant commission*]. I agree with Mr. Veale's statement of the issue of law, but with this additional comment with reference to * * * whether the commission applied the— * * * wrong legal test. It was indicated * * * that there must be an intent to abandon under the statute. The commission did make that statement, but in addition the commission found that in fact there was no discontinuance of service. So what I am saying is this: The commission stated two reasons for finding that the certificate of Yellow Transit was not abandoned, (1) that there was no discontinuance of service within the provisions of the statute and (2) there was no intent to abandon service. * * *

"*Mr. Davis* [*for purchaser-appellant Central Transport*]. I would agree with the statement made by Mr. Gibson."

Thus, it appears that one question to be decided by us is whether the order of the commission introduced into the issue of discontinuance the element of intent, as claimed by appellees, and so found by the trial court. We are compelled to disagree with the learned trial judge. We read the commission order to have distinguished clearly between abandonment and discontinuance. The order reads:

"There must be a clearly established *intent to abandon* before we should find that such *abandonment* has been effected." (Emphasis supplied.)

We must accord to the legislatively created body entrusted with motor carrier regulation at the very least the plain import of its own language. Had the commission applied the test of intent to the issue of discontinuance, we think it would not have confined its use of the word to the sentence in which it dealt only with abandonment. We hold that under the wording of the order, the commission did not apply an erroneous legal test. Our conclusion is

further supported, we think, by the use by the commission of the alternative language in its concluding sentence:

"Accordingly, we find that Yellow Transit Freight Lines, Inc., has not abandoned *or* discontinued service contrary to the provisions of the motor carrier act." (Emphasis supplied.)

We come then to the other decisional question presented. Was an issue of fact created under the record made before the commission as to whether Yellow, irrespective of any intent, discontinued service for more than 10 days without prior order of the commission?

At the outset we reject appellants' contention that proof of its continued service, within the meaning of the statute, can be established by proof of continued operations in interstate commerce. We so conclude because of what we think is the clear legislative intent expressed by the statute[6] itself. We quote therefrom:

"No common motor carrier authorized by this act to operate shall abandon or discontinue any service *established under the provisions of this act.*" (Emphasis supplied.)

The establishment of service in interstate commerce is dependent upon the grant of a certificate of public convenience and necessity by the interstate commerce commission to which the congress delegated that authority. No such service could possibly be established under "the provisions of this act."

The query then abides did appellant Yellow discontinue any service established under the provisions of this act?

Appellees contend in the alternative that the commission made no specific finding of fact in this

6 CL 1948, § 476.13 (Stat Ann § 22.546).

respect; but that if its order be construed as having made such a finding, it is unsupported by any evidence. This position was, in effect, adopted by the trial court.

While we may be sympathetic to the rationale urged by appellees that "any substantial interruption in one carrier's service tends to result in expansion of other facilities to meet the continuing needs of shippers, and thus to cause overcrowding if the suspended service is resumed" (*Gregg Cartage & Storage Co.* v. *United States,* 316 US 74, 83 [62 S Ct 932, 86 L ed 1283]) we find the argument inapposite. In the cited case, the United States Supreme Court was construing a Federal statute far broader in terms than that with which we are here concerned. Our commission exercises only those powers expressly delegated to it by the statute. (See *Kirkby* v. *Public Service Commission,* 320 Mich 608.) The Michigan public service commission has no broad grant of authority to establish a "State transportation policy," as has the interstate commerce commission to establish a "national transportation policy." The wisdom or efficacy of such limitation is not for our determination. What the carrier here manifestly did may not be "cricket." The transfer of its authority may result in a diversion of traffic heretofore enjoyed by appellees to its purchaser Central Transport. In fact, the commission, in its order, recognized this precise argument:

"While it is possible that curtailment of service or diminution of service followed by reactivation of competition could have an adverse effect on competitive carriers, we cannot but find this to be the lesser of the two evils."

The function of the commission is not to assess the relative evils of the consequence of its decision. It is to find whether or not a mandatory provision

of statute has been violated. *George F. Alger Company* v. *Public Service Commission*, 339 Mich 104. Reference to the *Alger Case* in this context requires us to distinguish it from the case at bar, or overrule it.

We believe *Alger* should be re-examined because of a regrettable but understandable confusion between a minority and majority *opinion* of the public service commission and an *order* thereof based on and included in the majority opinion. This transposition of wording carried over into the circuit court and ultimately made for a misapplication of found facts to a statute by this Court.

The majority opinion of the public service commission was based upon Rule 9 of the motor carrier rules regularly adopted by the commission and in full force and effect at the time the majority opinion and order included therein was handed down. The rule provides:

"9. Revocation for failure to commence operations.

"Any certificate or permit shall be revocable if the carrier fails to begin the service permitted within 30 days from the date authorized by the commission *unless said carrier shall show good and sufficient cause why the service has not been initiated,* or may be revoked, after hearing, on proof of violation of the statutes or the rules and regulations of this commission adopted and issued thereunder." 1954 AC, § R 460.103.   (Emphasis supplied.)

That the commission majority bottomed its holding on this rule is incontrovertibly established by the following excerpt from the majority opinion:

"This rule is headed 'revocation for failure to commence operations' and is intended to cover the situation of a carrier who fails to begin service within the stated period after such service is authorized. Thirty days are provided for instituting service,

*except for good cause shown, rather than the harsher
period of 10 days which is applicable to an estab-
lished carrier.* We believe that this rule is applicable
to the instant facts because Beaver and Wells *had
no established service prior to June 29, 1951."* (Em-
phasis supplied.)

The trial court, in its statement of the issue, said:

"One of the claims of the plaintiff, is that the cer-
tificate granted to Beaver & Wells on June 29, 1951,
became null and void because of the failure of the
transferee, Beaver & Wells, *to start operation under
said certificate within 10 days* after same was is-
sued." (Emphasis supplied.)

The court then includes in parenthesis this cita-
tion "Section 13, art 2, Michigan motor carrier act
(Stat Ann § 22.546)"[7]:

"Sec. 13. No abandonment of service. No com-
mon motor carrier authorized by this act to operate
shall abandon or discontinue any service established
under the provisions of this act without an order of
the commission. Any certificate under which serv-
ice is discontinued for more than 10 days without the
previous order of this commission authorizing the
same shall be deemed to be revoked without any
action upon the part of the commission."

It is apparent that the above statute was not the
provision on which the commission majority based
its opinion. The circuit judge recognized this but
held that because A. L. Kauffman Cartage Co., the
transferor, was conducting operations at the time of
the transfer to Beaver & Wells, Rule 9 was inappli-
cable and the statute controlled. In this, the learned
trial judge was in error and this Court followed his
misapplication of the statute.

Clearly, when the certificate was transferred to
Beaver & Wells, the commission, by its approval, au-

---

[7] CL 1948, § 476.13.

thorized a new service. True, as the court indicated, the operation had previously been performed by transferor Kauffman. However, Beaver & Wells, prior to the transfer, could not have performed that operation, and certainly as to them it was a new operation. It was a new operation as to the consignor which had not and could not have shipped via Beaver & Wells prior to the transfer.

To "operate" within the meaning of the statute there must of necessity be a consignor, a consignee, and a carrier. If a carrier, which prior to acquisition of rights, can thereafter serve a consignor or a consignee it could not previously have served; if a carrier can transport a commodity it could not previously have carried, or can serve an origin or destination point it could not previously have served, then a new service is authorized within the meaning of the previously quoted statute.

Thus in *Alger* a new service was initiated. The commission majority so found in these express terms "Beaver & Wells had no established service prior to June 29, 1951." It is self-evident that the new service could not be discontinued or abandoned before it was initiated. The statute relied upon by the trial court could not be applied. There is language in *Alger* that correctly interprets the involved statute in a factual situation to which it can be properly applied. *Alger,* however, did not present such facts. For the foregoing reasons, therefore, we now find while *Alger* was a correct statement of law, it was a misapplication of that law to the facts in that case. To avoid confusion as to its citable value, we regard it as necessary to overrule it.

Returning to the case at bar, we here hold that the following language in the commission order "we find that Yellow Transit Freight Lines, Inc., has not *abandoned or discontinued* service contrary to the provisions of the motor carrier act," constitutes a

specific finding of fact that the statute was not violated.

There remains then only the question of whether appellees here, complainants before the commission and plaintiffs in the court below, showed by "clear and satisfactory evidence" that the commission order was "unreasonable or unlawful."[8]   We construe these words as follows: "Unlawful", within the meaning of the motor carrier act, means an erroneous interpretation or application of law to properly established facts, or permissible inferences from facts. "Unreasonable" is a word of art in our jurisprudence and means arbitrary, capricious, or totally unsupported by admissible and admitted evidence.

Having heretofore determined in this case that the commission did not commit an error of law under our construction of its order, we inquire whether there was admissible and admitted evidence in the record made before the commission to support its specific finding of fact of statutory nondiscontinuance.

We are constrained to find that there was. It may be cool comfort to the able counsel representing all appellees to note that had the learned circuit judge been making the initial determination in the place and stead of the commission, there would be found in the record a plethora of evidence, exhibit-wise and testimonially, to support his conclusions. However, neither he nor we are permitted this function. The carrier (albeit required to do so whether operating *only* in interstate commerce) did continue during the involved period to file its mileage reports. It did certificate equipment as required by the act. It had in force and effect proper tariffs for determination of intrastate charges, and there was as noted,

_____

.[8] See CLS 1961, § 479.20 (Stat Ann 1963 Cum Supp § 22.585).—
REPORTER.

*supra,* evidence admissible and admitted from which the commission could permissibly infer or specifically find that intrastate service was maintained. We refer specifically to the following testimony:

(*Kenneth E. Midgley*)
"*Q.* To the best of your knowledge has its [Yellow's] operations been continued all during the period of time covered by the complaint?
"*A.* That is right."

This testimony, standing alone, might well be characterized as conclusionary or opinionary. There follows, however, testimony that Yellow specifically directed its Michigan counsel to apply to the commission "for  *  *  *  alternate routes so as to permit the service out of the Marshall terminal instead of—I believe it was the Jackson terminal." This is followed by reference to closing more Michigan terminals and serving the points from Marshall. Again the witness Midgley testified:

"*Q.* You disposed of that terminal and elected to serve out of Marshall because it duplicated some of these Yellow Transit terminals?
"*A.* That is right. That is the opinion of the board, and they authorized the application of the alternate route."

This testimony speaks eloquently in support of the trial judge's conclusion that Yellow was designedly and deliberately discouraging intrastate traffic. It may very well have been the reason that for stated periods no intrastate movements were made. We are not prepared, however, to construe the statute to mean that the trial judge was able to make an original inference of fact and a consequent conclusion of law heretofore quoted that the action of the carrier was "equivalent to outright refusal".

The commission, in the exercise of its statutorily delegated powers, was certainly empowered to make

such an inference of fact.  It, however, reached the
opposite conclusion:

"It is also apparent because of its financial con-
dition that Yellow Transit Freight Lines, Inc., found
it necessary to relatively drastically curtail the in-
trastate service.  *  *  *  This curtailment of service
was achieved by closing of certain terminals and
generally avoiding certain types of traffic."

It was a permissible inference of fact for the
commission to find that the act of applying for an
alternate route negatived any design to discontinue
or abandon intrastate service.  This is not to dilute
our prior interpretation of the statute as correctly
quoted by the trial judge from *Alger*[9] that:

"The words 'abandon or discontinue' are not
treated by our Supreme Court as being synon-
ymous."

We reassert that an outright discontinuance of
service for more than 10 days, irrespective of intent
without previous order of the commission, is viola-
tive of the statute.  We restate for emphasis that
the same factual situation as presented in this case
could have supported a commission finding that
service was discontinued for the statutory period.
The point is that the inference of fact from the
testimony was the initial prerogative of the com-
mission.  It was that body which took the testimony,
observed the witnesses, and was the judge of their
credibility.  The fact that no shipments in intra-
state commerce were made for in excess of 10 days,
standing alone, does not support conclusive proof of
discontinuance of service.  Even the fact that a
carrier discourages a certain type of traffic and
ships none for a 10-day period, does not alone
constitute conclusive proof of discontinuance of

---

[9] See our prior analysis of *Alger* herein.

service under the statute. Discontinuance of service is a question of fact. No discontinuance was found by the commission.

Whether we, or the trial court, would have arrived at the same conclusion from these facts is not before us. We might well have reached the same conclusion as did Judge Salmon. Under the record, as we read it, appellees did not show by "clear and satisfactory" evidence that the order of the commission was unreasonable.

The order of the circuit court reversing the order of the commission is vacated. The case should be remanded to the circuit court with directions to enter its order affirming the order of the commission. No costs, the construction of a statute being involved.

KELLY, J., concurred with O'HARA, J.

BLACK, J., concurred in the result.

SOURIS, J. (*for reversal and remand for redetermination*). This is an appeal from a judgment of the Ingham county circuit court reversing an order of the public service commission in which the commission concluded that Yellow Transit Freight Lines, Inc., had not abandoned or discontinued service as a common motor carrier within the meaning of section 13, article 2 of the motor carrier act. CL 1948, § 476.13 (Stat Ann § 22.546).

The proceedings before the commission were instituted on complaint of eight common motor carriers, competitors of Yellow Transit. It was their claim that Yellow Transit had discontinued, for more than 10 days without prior commission approval, the service its certificate from the commission authorized it to perform in intrastate commerce and that, therefore, such certificate had become automatically revoked by operation of the above

cited statutory provision.   That provision reads as follows:

"Sec. 13.   No abandonment of service.   No common motor carrier authorized by this act to operate shall abandon or discontinue any service established under the provisions of this act without an order of the commission.   Any certificate under which service is discontinued for more than 10 days without the previous order of this commission authorizing the same shall be deemed to be revoked without any action upon the part of the commission."

After a full testimonial hearing, the commission rendered its decision.   It follows in full:

"This matter arises as a result of a complaint and application filed on May 17, 1961.   Several days of hearings were held and briefs have been filed.

"The complaint alleges, in effect, that Yellow Transit Freight Lines, Inc., has discontinued or abandoned service for a period in excess of 10 days without a prior order of the commission authorizing such discontinuance or abandonment, and that, in effect, therefore, the certificate has been revoked by action of law.

"Yellow Transit Freight Lines, Inc., purchased the intrastate regular route common motor carrier authority of Michigan Motor Freight Lines in August of 1957.   The authority purchased was quite extensive and covered many of the main metropolitan areas of the State including but not limited to Detroit, Jackson, Port Huron, Lansing, and Monroe.

"It is apparent that from the time of commencement of operations under the certificate, Yellow Transit Freight Lines, Inc., did not operate as extensively as had its predecessor in prior years when that predecessor was an active competitive part of the transportation system within the State of Michigan.   It is also apparent because of its financial condition that Yellow Transit Freight Lines, Inc., found it necessary to relatively drasti-

cally curtail the intrastate service which it performed within this State and to necessarily concentrate on the relatively longer haul interstate operations. Obviously, of course, these were not circumstances with which the carrier was particularly pleased but its future required such a curtailment at that time. This curtailment of service was achieved by closing of certain terminals and generally avoiding certain types of traffic. The extent of the curtailment and diminution also varied between different areas.

"We are not convinced, however, drastic though it may have been, that the action of the carrier was such as to result in abandonment. We are dealing here with a knowledgeable carrier experienced in transportation and fully aware of its responsibilities as a common carrier and equally fully aware of the results of any ill-conceived actions. Abandonment or discontinuance should only be found as a result of a more positive action than is here indicated. There must be a clearly established intent to abandon before we should find that such abandonment has been effected. To say otherwise with respect to the operations of any general commodity regular route carrier, with the unlimited factors which may affect its operations and over which it has possibly no control, would put every authority of every such carrier in continual jeopardy. We do not feel that any common carrier should be placed in any such position. While it is possible that curtailment of service or diminution of service followed by reactivation of competition could have an adverse effect on competitive carriers, we cannot but find this to be the lesser of the two evils.

"Accordingly, we find that Yellow Transit Freight Lines, Inc., has not abandoned or discontinued service contrary to the provisions of the motor carrier act."

The copy of the commission's decision was served on the complaining carriers on May 18, 1962. Apparently on the same date Yellow Transit filed with

the commission an application to transfer its certified authority involved in this dispute to Central Transport, Inc.   Within the time allowed by law,[1] the complaining carriers and three others appealed the above-quoted decision of the commission by filing a bill of complaint in the Ingham circuit court against the commission.   By appropriate motions and orders, Yellow Transit and Central Transport intervened in the circuit proceedings as defendants and still another of Yellow Transit's rivals, Jones Transfer Company, intervened as a plaintiff.   After issue was joined and by stipulation of the parties, the record of the proceedings before the commission was submitted to the circuit judge as the basis for his decision of the issues framed by the pleadings. His decision was that the commission erred in failing to hold that Yellow Transit's certificate had been revoked by operation of law, section 13, article 2 of the act, and he, therefore, decreed it to be invalid.

In reaching his decision Judge Salmon, the circuit judge, noted that the commission confused the words "abandonment" and "discontinuance" by requiring evidence of intent to discontinue service as a predicate to finding such discontinuance under the act, whereas this Court, in *George F. Alger Company* v. *Public Service Commission* (1954), 339 Mich 104, 112, had held that while intent may be pertinent to determination that service has been permanently abandoned, it is irrelevant in determining whether service has been discontinued for more than 10 days. Judge Salmon also noted the commission's finding that Yellow Transit had curtailed its intrastate service drastically by closing certain of its terminals and generally avoiding certain types of traffic.   He found ample evidence in the record to support such finding, including evidence that for a two-month

---

[1] CLS 1961, § 479.20 (Stat Ann 1963 Cum Supp § 22.585).

period, June and July, 1961, Yellow Transit made no, intrastate shipments whatever from any terminal in Michigan. He reasoned to his conclusion thus:

"In determining the question of whether the commission's finding of curtailment and diminution of service in reality amounted to a total and outright discontinuance it should be kept in mind that one of the requirements of a common carrier as defined in the act [CLS 1961, § 475.1 (Stat Ann 1963 Cum Supp § 22.531)] is to hold itself out to the public to transport intrastate and further that the act in effect says that the business of such carriers is declared to be affected with a public interest and is regulated to insure adequate motor transportation and further that the commission and not the carrier is to do the regulating. It should also be kept in mind that statutes of this kind should be construed in the interest of the shipping public and not the carrier.

\* \* \*

"The commission in its order says that we are here dealing with a knowledgeable carrier experienced in transportation and fully aware of its responsibilities as a common carrier and equally fully aware of the results of any ill-conceived actions. Knowledgeable and experienced though it is and granting that it would wish to preserve valuable operating authority nonetheless we think its strategy culminated into a total discontinuance and thus contravened the statute. This carrier appears to have done all things necessary to meet its responsibilities as a common carrier except to transport property intrastate and this is accomplished by avoiding same to concentrate on the more profitable long hauls.

"This case cannot be likened to a common carrier who simply sits by and does not transport goods because none are tendered to it. Here the carrier designedly and intentionally avoided intrastate traffic and carried this on to a point where for two full months it transported none from any terminal.

"Under such circumstances it seems unbefitting and immaterial for the carrier to attempt to justify its position by arguing that service was not refused any shipper. Obviously if a carrier deliberately is avoiding intrastate traffic the time eventually arrives when it will not be tendered such movements. The logical inference is that this is what happened in this case. Its conduct in our opinion was equivalent to an outright refusal.

"Apparently the legislature in passing the so-called discontinuance statute considered it to be extremely important to a well-regulated transportation system for a carrier to secure approval from the commission for a discontinuance of any of its established service. For it provided in effect that if the carrier did not do so it would lose its operating authority. This severe effect to some carriers forcefully emphasizes the importance placed upon it by the legislature. However the consequence of the statute is not a material or valid reason for not applying it if the facts bring the carrier under its provisions."

On appeal to this Court, Yellow Transit argues, on the strength of the controlling opinion in *J. E. Bejin Cartage Company* v. *Public Service Commission* (1958), 352 Mich 139, a 4-to-3 decision, that Judge Salmon usurped the function of the commission by substituting his judgment of the facts for the facts found by the commission. In *Bejin,* certain common motor carriers, like plaintiffs here, sought to review in the circuit court a commission order authorizing the transfer by Detroit Delivery, Inc., to Peter P. Ellis Delivery System, Inc., of certain of Detroit Delivery's certified authority claimed by plaintiffs to have been forfeited as a consequence of section 13 prior to transfer. In *Bejin,* unlike this case of Associated Truck, the commission had made 10 explicit findings of fact set forth in the commission's majority opinion and on the basis of which it

concluded that Detroit Delivery's certified authority had not been forfeited and, therefore, could and should be transferred to Ellis. As viewed by this Court's Justices who signed the controlling opinion in *Bejin,* the circuit court (p 154) "exceeded its authority in undertaking to make a finding of new or different facts, including a different finding on the ultimate fact of whether there was or was not any such abandonment or discontinuance of service".

While no one disagrees with the general proposition, stated more fully in *Bejin,* that as a general rule administrative findings of fact if supported by evidence are conclusive upon a reviewing court, application of this general proposition continues to give us difficulty. However, I do not consider it necessary to decision of this appeal to review again (see *Wickey* v. *Employment Security Commission* [1963], 369 Mich 487, 489–499) all of the factors which establish the proper scope of judicial review of such administrative findings. Appellate decision here depends, in my view, upon the duty of a reviewing court to reverse an administrative board's decision upon conclusion that the decision was based upon a misconception of controlling law.

The sole issue in *Bejin,* as the controlling opinion viewed it, was one of fact and specifically, the reviewing court's right to make findings of fact contrary to those made by the commission. There is no indication in that opinion, as there is in the dissent, see 352 Mich at 160, 161, of belief that the commission misapplied the facts it found to the law of the case as set forth in section 13. Nor is there in that controlling opinion anything to indicate that a reviewing court may not set aside a commission's order if based upon such misapplication of found facts to the applicable law. Indeed, its treatment of *George F. Alger Company* v. *Public Service Commission* (1954), 339 Mich 104, indicates approval of

that decision as one in which the Court affirmed a circuit court's decree setting aside a commission order which found no forfeiture of certified authority on the ground that the undisputed facts found by the commission, and amply supported by the evidence, constituted abandonment of the authority as a matter of law contrary to the commission's conclusion. It seems to me that we are confronted today with a similar case.

Thus, while detailed findings of fact such as the commission included in its *Bejin* order are lacking in the commission decision reversed by the circuit judge, it clearly appears from the written decision that the commission found that Yellow Transit drastically curtailed its intrastate service by closing certain terminals and generally avoiding certain types of traffic. The extent of such curtailment is not explicitly found by the commission other than that it was drastic. Unfortunately, although the claim of Yellow Transit's rivals before the commission was expressly limited to one of discontinuance of service, the commission in its decision proceeded to discuss the case as one in which it was claimed the service was "abandoned" within the meaning of section 13. Finding an absence of proof that Yellow Transit intended to abandon its intrastate service, it then concluded that there had been no such abandonment and, without further discussion, that there had been no discontinuance of service within the meaning of section 13, either.

I believe Judge Salmon fairly characterized the commission's action thusly:

"The commission in deciding this case seems to have used the words 'abandonment' and 'discontinuance' synonymously and considering the order in its entirety it appears as if the matter of intent was applied to both theories.

"If the commission had not so intended the court feels it would clearly have negatived the matter of intent as to a discontinuance."

Even a cursory reading of the commission's decision in its entirety, quoted in the forepart of this opinion, dispels any notion that the commission determined, first, that, absent intent to abandon, there was no abandonment within the meaning of section 13 by Yellow Transit and, second, that, wholly aside from Yellow Transit's intent, its actions in drastically curtailing its intrastate service did not constitute discontinuance thereof for more than 10 days within the meaning of section 13. Judge Salmon read the decision as one which confused the two statutory concepts of abandonment, which may be accomplished instanter provided there be the requisite intent (*Alger, supra,* p 112), and of discontinuance, which occurs whenever service is discontinued for more than 10 days without the prior approval of the commission and whether or not the carrier intends to forfeit its certified authority. What was said in *Alger,* at p 112, and as to the validity of which there is no current challenge, bears repeating:

"Throughout defendants' brief runs the thought that there could be no forfeiture under the statute so long as they intended to and took steps looking to rendering service some time in the future. Acceptance of that theory would serve to read the 10-day limitation on discontinuance of service out of the statute altogether. In consequence, it must be said that the dictionary definition of the word 'abandon', quoted by defendants as being 'to relinquish or give up with intent of never again resuming one's right,' pertinent when the question relates to permanent abandonment, is entirely irrelevant when, as here, the question is simply whether service was discontinued temporarily, for more than 10 days."

In the first quoted paragraph of Judge Salmon's opinion, p 289, *supra,* the judge properly identifies the issue presented by this controversy. That issue involves the power of the commission to regulate the availability of commodity carrier services to the people of this State as delegated to the commission by the legislature. The legislative purpose manifested in section 13 is clearly evident when that section is read in the light of the legislature's declaration that the business of motor carriers of passengers and property is affected with a public interest and that one reason requiring regulation of such carriers is the insurance of adequate motor transportation facilities. Section 1, article 5 of the act, CL 1948, § 479.1 (Stat Ann § 22.566). So considered, section 13 is designed to assure that a carrier which seeks authority to perform services, actually performs them to the extent there is a demand therefor and that when such carrier determines to abandon its authority or when such carrier in fact discontinues such services for more than 10 days without prior approval of the commission, the commission can authorize new carrier applicants to perform such services or other certified carriers can expand their facilities in relative economic security to fulfill the public's need for such services. It is in this way the legislature sought to assure the people adequate transportation services and to maintain the power to regulate the availability of such services in the hands of the commission.

To permit a carrier voluntarily to curtail its services so drastically that no services are rendered for periods in excess of 10 days without enforcement of the legislative mandate of section 13, would place in the hands of such carriers, rather than the commission, the power to determine to what extent the public's need for transportation services will be met. To permit a carrier voluntarily to suspend service,

to place its operating rights in a state of temporary dormancy, would be, as the Court said in *Alger,* (p 112), "to read the 10-day limitation on discontinuance of service out of the statute altogether."

As I have indicated above, I believe the commission failed to apply the proper statutory standard to the facts it found developed in the proceedings before it. While I find ample support in this record for Judge Salmon's more explicit findings of fact and believe that his application of the law to those facts was eminently correct, it is equally evident to me that, having concluded as he did that the commission erred in applying the law to the facts it found, Judge Salmon should have remanded the cause to the commission for redetermination by it in the light of the law stated in his opinion rather than to proceed to an independent determination of the facts in the circuit court. Accordingly, I believe Judge Salmon's judgment should be reversed and the cause remanded to him for further remand to the commission with directions to reopen proofs if any party or the commission so desires and to redetermine the issues in the light of this opinion. Upon such redetermination, the commission should be directed to make explicit findings of fact, in such form as were made by the commission's majority in *Bejin, supra,* so that in the event of judicial review, the commission's action properly can be judged.

T. M. KAVANAGH, C. J., and ADAMS, J., concurred with SOURIS, J.

SMITH, J. (*concurring in reversal for remand and redetermination*). Although I agree with Justice O'HARA that the case of *George F. Alger Company v. Public Service Commission* (1954), 339 Mich 104, was decided upon an erroneous principle and, therefore, should be overruled for the reasons which

he gives, nevertheless, the limited use to which Justice SOURIS puts the *Alger Case* is also correct, that is, for the definition of what constitutes a "discontinuance" and what constitutes "abandonment."

However, I am moved to concur in the disposition of Justice SOURIS because, although I have no doubt that the public service commission is fully aware of the distinction between these two terms, the commission order is unclear in making this distinction. Opinions and orders of administrative agencies ought to reflect clearly the application of the expertise which such bodies undoubtedly possess. For a somewhat similar problem of confused drafting, see *Chrysler Corporation* v. *Losada,* 376 Mich 209.

DETHMERS, J., did not sit.