# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Application of CONSUMERS ENERGY to
Increase Electric Rates.

ATTORNEY GENERAL,

        Appellant,

v

MICHIGAN PUBLIC SERVICE COMMISSION,

        Appellee,

and

CONSUMERS ENERGY COMPANY,

        Petitioner-Appellee.

FOR PUBLICATION
July 5, 2016
9:05 a.m.

No. 317434
MPSC
LC No. 00-017087

## ON REMAND

Before: O'CONNELL, P.J., and FORT HOOD and GADOLA, JJ.

GADOLA, J.

In *In re Application of Consumers Energy to Increase Electric Rates*, 498 Mich 967; 873 NW2d 108 (2016), our Supreme Court reversed the portion of this Court's judgment in *Attorney General v Mich Pub Serv Comm*, unpublished opinion per curiam of the Court of Appeals, issued April 30, 2015 (Docket Nos. 317434 & 317456), that addressed the Attorney General's claim of appeal in Docket No. 317434 and remanded the case for consideration of the appeal.[1]

Our original opinion in this case contains a concise statement of the underlying facts and proceedings:

---

[1] The Attorney General's appeal was consolidated with that filed by Michelle Rison, et al, individuals who are customers of Consumers Energy Company. That appeal (Docket No. 317456) is not affected by our Supreme Court's remand order.

Several years ago, Consumers Energy began implementing an AMI[1] program in Michigan. On November 4, 2010, the PSC issued an order in Case No. U-16191 that approved Consumers Energy's pilot AMI program, but required Consumers Energy to meet certain conditions, such as providing information on the benefits and costs of the program, before approving full deployment of the AMI program. In *In re Application of Consumers Energy Co to Increase Rates*, unpublished opinion per curiam of the Court of Appeals, issued November 20, 2012 (Docket Nos. 301318 and 301381), this Court affirmed the PSC's decision regarding Consumers Energy's pilot AMI program. On June 7, 2012, the PSC issued an order in Case No. U-16794 authorizing Consumers Energy to proceed with Phase 2 of its AMI deployment program. In that case, the PSC adopted $44.8 million in expenditures for the AMI program in Consumers Energy's rate base.

On September 19, 2012, Consumers Energy filed an application requesting rate relief in the case underlying this appeal, Case No. U-17087, to cover, among other things, its ongoing investments associated with the AMI program. In addition, Consumers Energy sought approval of opt-out tariffs for customers who did not wish to participate in the AMI program. On October 19, 2012, an administrative law judge (ALJ) granted intervenor status to the Attorney General.

On May 7, 2013, the parties filed a settlement agreement in which they agreed to an annual rate increase of $89 million. However, in the agreement, the Attorney General reserved two issues for future resolution, including (1) a request to the PSC "to direct Consumers Energy to suspend the [AMI] program," and (2) an objection "to the amount of the 'opt-out' fee." The PSC entered an order on May 15, 2013, approving the settlement agreement. Thereafter, the Attorney General challenged the PSC's continued support of Phase 2 of Consumers Energy's AMI program and challenged Consumers Energy's application for approval of its opt-out tariffs.

In response, Consumers Energy argued that it prepared an updated business case analysis for its AMI program in March 2012, and that the analysis indicated a 20-year positive net present value (NPV) of $42 million for the AMI program. Consumers Energy noted that the Attorney General also sought suspension of its AMI program in Case Nos. U-16191 and U-16794 on the ground that the cost/benefit analysis used in each case was flawed, but that the PSC rejected the Attorney General's request in each case. The Attorney General argued that the PSC should suspend Consumers Energy's AMI program until a cost/benefit analysis showed that the program would bring value to customers. The Attorney General asserted that its analysis showed that the AMI program had a negative NPV, and that Consumers Energy's testimony regarding savings from the AMI program was speculative.

On June 28, 2013, the PSC issued an order approving Consumers Energy's continuation of the AMI program and approving Consumers Energy's opt-out tariffs.

---

[1] An AMI meter, also known as a smart meter, is capable of collecting near-real-time data on a customer's energy usage and reporting the data to the utility at frequent intervals. *In re Applications of Detroit Edison Co*, 296 Mich App 101, 114; 817 NW2d 630 (2012). [*Attorney General*, unpub op at 2-3.]

The standard of review for PSC orders is narrow and well defined.[2] Pursuant to MCL 462.25, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Mich Consol Gas Co v Pub Serv Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC has the burden of proving by clear and convincing evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). An order is unreasonable if it is not supported by the evidence. *Associated Truck Lines, Inc v Pub Serv Comm*, 377 Mich 259, 279; 140 NW2d 515 (1966).

A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Attorney General v Pub Serv Comm*, 165 Mich App 230, 235; 418 NW2d 660 (1987).

---

[2] Although the dissent correctly points out that the Attorney General's settlement agreement did not resolve two issues, (1) a request to the PSC to suspend the AMI program and (2) an objection to the amount of the opt-out fee if the program continued, the Attorney General only contested the first issue in its appeal in Docket No. 317434, arguing that the PSC should not have allowed the AMI program to continue because the record lacked competent, material, and substantial evidence demonstrating that the benefits of the program outweighed its costs. The Attorney General did not object to the amount of the opt-out tariffs in its appeal. Rather, the appellant customers, Michelle Rison, et al, in Docket No. 317456 objected to the amount of the opt-out tariffs. In that appeal, we concluded that the opt-out issue was "given only cursory analysis in the PSC lower court record," and therefore remanded the issue to the PSC for a contested case hearing. *Attorney General*, unpub op at 6. In its remand order, the Supreme Court directed us to consider the merits of the Attorney General's claim of appeal in Docket No. 317434. *In re Application of Consumers Energy to Increase Electric Rates*, 498 Mich at 967. The order did not disturb our ruling in Docket No. 317456. Accordingly, the Supreme Court's remand order provides that, despite the Attorney General's agreement to the $89 million rate increase, the Attorney General could still contest the continuance of the AMI program on the basis that the costs of the program outweighed its benefits. The only issue before the Court, therefore, is whether sufficient evidence supported the PSC's conclusion that the benefits of the AMI program outweighed its costs.

We give due deference to the PSC's administrative expertise, and will not substitute our judgment for that of the PSC. *Attorney General v Pub Serv Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). We give respectful consideration to the PSC's construction of a statute that the PSC is empowered to execute, and this Court will not overrule that construction absent cogent reasons. If the language of a statute is vague or obscure, the PSC's construction serves as an aid to determining the legislative intent, and will be given weight if it does not conflict with the language of the statute or the purpose of the Legislature. However, the construction given to a statute by the PSC is not binding on us. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103-109; 754 NW2d 259 (2008). Whether the PSC exceeded the scope of its authority is a question of law that is reviewed de novo. *In re Complaint of Pelland Against Ameritech Mich*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

On appeal, the Attorney General argues that although Consumers maintained that its updated cost/benefit analysis indicated a $42 million NPV over 20 years for the AMI program, Consumers could not confirm the estimated savings and could not support its estimates, and argues that the alleged savings were inflated and were not based on any studies of Consumers' service territory. The Attorney General further argues that the PSC did not do an independent analysis of Consumers' cost/benefit analysis, and erroneously relied on prior factual determinations based on a different cost/benefit analysis to find that Consumers' costs were reasonable and prudent. We disagree.[3]

Consumers' witness Lauren Youngdahl, the Smart Grid Customer Engagement Programs Manager, testified that the AMI program would advance the modernization of the electric grid, and that its benefits could be divided into five key categories: (1) customer programs such as pricing demand response (35% of total benefits); (2) advanced energy theft detection (22% of

---

[3] We reject the PSC's argument that the Attorney General lacks standing to challenge the PSC's June 28, 2013 order. A party must be aggrieved by a lower court's decision in order to have standing to bring an appeal from that decision. MCR 7.203(A); *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 290-291; 715 NW2d 846 (2006). "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *Federated Ins Co*, 475 Mich at 291 (internal quotation marks omitted). The Attorney General had the statutory right to intervene to represent the interests of the people of the state. MCL 14.28. The Attorney General intervened because the PSC's decision would affect the rates paid by Consumers' customers. The Attorney General can be said to be a party in interest with standing to appeal the PSC's order. MCL 462.26(1).

Similarly, the argument by Consumers and the PSC that the Attorney General's appeal is a collateral attack on prior orders is without merit. Such an attack is precluded. *Kosch v Kosch*, 233 Mich App 346, 353; 592 NW2d 434 (1999). The PSC in its June 28, 2013 order in this case made the latest in a series of decisions to allow Consumers' AMI program to go forward. The PSC's decision was based on an updated cost/benefit analysis prepared by Consumers for this case. The Attorney General may be making arguments similar to those made in prior cases, but the arguments are based on evidence presented in this case. The Attorney General's appeal is not a collateral attack.

total benefits); (3) reduced meter reading costs (19% of total benefits); (4) other operating and maintenance and avoided capital savings (17% of total benefits); and (5) terminal value beyond the end date of the analysis (7% of total benefits).

Youngdahl relied on a business case analysis that was updated in March of 2012, and that indicated that the AMI program had an overall 20-year NPV of $42 million. The business case included final pricing for smart meters, associated components for smart meters, vendor services, and meter installation. The business case reassessed and reduced anticipated IT infrastructure costs. The business case analysis included benefits confirmed by Phase 1 of the AMI pilot programming, including remote metering and meter event capabilities that would facilitate O&M cost reductions, improve employee safety, reduce customers' bills, reduce outage restoration times, and enhance energy consumption management.

Attorney General witness Sebastian Coppola recommended that the PSC suspend Consumers' AMI program. Coppola testified that his calculations showed that the program had a negative NPV of $133.4 million. On appeal, the Attorney General emphasizes that the savings predicted by Consumers could not be confirmed and were not based on studies performed with Consumers' customers.

The essence of the Attorney General's argument is that the PSC's decision to continue to fund Consumers' AMI program was not supported by sufficient evidence on the record. The Attorney General asserts that Consumers' savings figures were aspirational, and were not based on actual studies of Consumers' own customers. The Attorney General relies on *In re Applications of Detroit Edison Co*, 296 Mich App 101; 817 NW2d 630 (2012), as support for the proposition that evidence consisting of "aspirational testimony describing [a program] in optimistic but speculative terms[]" does not constitute sufficient evidence on which to approve a rate increase. *Id*. at 115. However, that case is distinguishable from the instant matter in that in this case, the settlement agreement established that Consumers was entitled to a revenue increase in the amount of $89 million. That revenue increase was unrelated to the issue of whether the PSC should direct Consumers to suspend its AMI program.

The parties presented contradictory testimony on Consumers' AMI program and whether the analysis presented by Consumers showing that the program would have an estimated 20-year net positive value of $42 million was sufficient to authorize Consumers to continue the program. However, the PSC was entitled to rely on the testimony presented by Consumers' witness, even though other testimony reached opposite conclusions. See *Great Lakes Steel Div of Nat'l Steel Corp v Mich Pub Serv Comm*, 130 Mich App 470, 481-482; 344 NW2d 321 (1983). The testimony given by Youngdahl was based on the updated business case, which contained data based on Phase 1 of the AMI program and projections based on that data. The PSC emphasized that it would continue to review costs associated with Consumers' AMI program in each future

rate case. The PSC's order approving full deployment of Consumers' AMI program was supported by the requisite evidence, and was not unlawful or unreasonable. MCL 462.26(8).

Affirmed.

/s/ Michael F. Gadola
/s/ Karen M. Fort Hood